**EPSTEIN BECKER & GREEN, P.C.**
Kenneth J. Kelly (KK 4195)
Lori A. Jordan (LJ 0853)
250 Park Avenue
New York, New York 10177-0077
(212) 351-4500
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
KATHLEEN G. CULLY,

                Plaintiff,

        - against -             07 CIV. 8195 (PKC)

CIFG HOLDING, CIFG GUARANTY, CIFG
EUROPE, CIFG SERVICES, INC., CIFG
ASSURANCE NORTH AMERICA, INC., and
JACQUES ROLFO,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF DEFENDANTS CIFG HOLDING AND CIFG SERVICES, INC. IN SUPPORT OF MOTION TO DISMISS CLAIMS RELATING TO LONG-TERM INCENTIVES

ON THE BRIEF:
      Kenneth J. Kelly
      Lori A. Jordan

**TABLE OF CONTENTS**

Statement of Facts.................................................................................................... 2

   A.   The Claims .................................................................................................. 2

   B.   The Terms of the LTI Plans ....................................................................... 3

   C.   Plaintiff, as General Counsel, Knew the Terms of the Plans She Seeks to Enforce ....... 5

   D.   Conditions Precedent Have Been Fulfilled................................................ 6

     Argument  THE LTI AWARD CLAIMS AGAINST CIFG HOLDING  AND CIFG SERVICES SHOULD BE DISMISSED ........................................................ 7

   A.   A Mandatory and Exclusive Forum Selection Clause Is Enforceable........................... 7

   B.   A Mandatory Arbitration Clause Is Enforceable ....................................... 11

Conclusion ............................................................................................................ 15

i

## TABLE OF AUTHORITIES

### CASES

AT&T Tech., Inc. v. Communications Workers, 475 U.S. 643 (1986)..........................................12

Ana Distribution, Inc. v. CMA-CGM (America) Inc., 329 F. Supp. 2d 565 (S.D.N.Y. 2004) ......................................................................................................................................................9

Baldeo v. Darden Restaurants, Inc., 2005 WL 44703 (E.D.N.Y. Jan. 11, 2005) ...........................13

Brennen v. Phyto-Riker Pharmaceuticals, Ltd., 2002 WL 1349742 (S.D.N.Y. June 20, 2002) ...............................................................................................................................................7, 8, 11

Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213 (1985)...............................................................12

Debono v. Washington Mutual Bank, 2006 WL 3538938 (S.D.N.Y. Dec. 8, 2006) ....................13

Direct Mail Prod. Serv. Ltd. V. MBNA Corp., 2000 WL. 1277597 (S.D.N.Y. Sept. 7, 2000) ...................................................................................................................................................10

DuBois v. Macy's East Incorporated, 2007 WL 3193169 (E.D.N.Y. July 13, 2007)........11, 12, 13

Effron v. Sun Line Cruises, Inc., 67 F.3d 7 (2d Cir. 1995) ...............................................................9

Gold v. Deutsche Aktiengessellschaft, 365 F.3d 144 (2d Cir. 2004) ..............................................13

Hongkong and Shanghai Banking Corp. v. Suveyke, 392 F. Supp. 2d 489 (E.D.N.Y. 2005) ...................................................................................................................................................9

Lumhoo v. Home Depot USA, Inc., 229 F.Supp.2d 121 (E.D.N.Y. 2002) ....................................14

M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972) ...........................................................7, 8

Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983)...................................12

New Moon Shipping Co. v. Man B & W Diesel AG, 121 F.3d 24 (2d Cir. 1997) ........................10

Register.com, Inc. v. Verio, Inc., 356 F.3d 427 (2d Cir. 2004)........................................................13

Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993)..................................................8, 10

Sam Jin World Trading, Inc. v. CMA-CGM (America) Inc., 2004 WL 2496198 (S.D.N.Y. Nov. 3, 2004) ..........................................................................................................................9

Sherr v. Dell, Inc., 2006 WL 2109436 (S.D.N.Y. July 27, 2006) ...................................................13

Townsend v. Smith Barney Shearson Inc., 906 F. Supp. 153 (W.D.N.Y. 1995) ...........................12

## STATUTES

Federal Arbitration Act, 9 U.S.C. §§ 1 et seq ..........................................................................1, 11

9 U.S.C. § 2 ....................................................................................................................................12

9 U.S.C. § 3....................................................................................................................................12

9 U.S.C. § 4....................................................................................................................................12

**EPSTEIN BECKER & GREEN, P.C.**
Kenneth J. Kelly (KK 4195)
Lori A. Jordan (LJ 0853)
250 Park Avenue
New York, New York 10177-0077
(212) 351-4500
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KATHLEEN G. CULLY,

                    Plaintiff,

           - against -                    07 CIV. 8195 (PKC)

CIFG HOLDING, CIFG GUARANTY, CIFG
EUROPE, CIFG SERVICES, INC., CIFG
ASSURANCE NORTH AMERICA, INC., and
JACQUES ROLFO,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### MEMORANDUM OF DEFENDANTS CIFG HOLDING
### AND CIFG SERVICES, INC. IN SUPPORT OF MOTION TO
### DISMISS CLAIMS RELATING TO LONG-TERM INCENTIVES

        Defendants CIFG Holding and CIFG Services, Inc. ("CIFG Services")

respectfully submit this memorandum of law in support of their motion pursuant to Rule 12(b)(3)

of the Federal Rules of Civil Procedure, and sections 2, 3 and 4 of the Federal Arbitration Act, 9

U.S.C. §§ 1 et seq. ("FAA") dismissing all claims asserted in the complaint against CIFG

Holding relating to long-term incentive ("LTI") awards that plaintiff asserts have been denied

her and further directing arbitration of her claims relating to LTI awards made by CIFG Services.

Each of the governing LTI plan documents provides for exclusive jurisdiction of disputes either

in the courts in France or before the American Arbitration Association ("AAA").

Statement of Facts[1]

A.    The Claims

Plaintiff Kathleen Cully ("Cully") alleges that she did not receive the proceeds of certain long-term incentive ("LTI") compensation grants that had previously been awarded or promised to her, and that defendants have anticipatorily breached the terms of the LTI plans at issue by advising her that certain LTI benefits which she had been awarded have been forfeited.

The complaint alleges in very general terms in several different causes of action that "defendants" breached "their" agreements with her regarding the "LTI compensation programs." (See, e.g., complaint ¶ 117.) In point of fact, the only parties to the LTI plans other than plaintiff were either CIFG Holding or CIFG Services. (See Brown Decl. Exhs. A, B, C and D.)

The claims asserted in the complaint which are subject to this motion are the claims wherein plaintiff alleges she has been damaged due to defendants' failure to pay her LTI benefits granted under the applicable plans or have repudiated their obligations by advising her that her post-resignation conduct has resulted in a forfeiture of unvested rights. (See, e.g., complaint ¶¶ 79, 82). The claims at issue (insofar as they relate to plaintiff's LTI awards) are the seventh cause of action for "breach of contract;" the eighth cause of action for "breach of obligation of good faith and fair dealing;" the ninth cause of action for "promissory estoppel" as to "promises . . . concerning the terms of receipt of awards under the LTI plans;" the tenth cause of action for "unjust enrichment" arising from the alleged "failure to allow plaintiff the full benefit of the LTI compensation plans;" and the eleventh cause of action for "fraudulent inducement" concerning "the award of LTI compensation."    She also seeks compensatory

---

[1] The relevant facts are set forth in the December 7, 2007 declaration of Pamela Brown ("Brown Decl."), who was at all relevant times the head of Human Resources at CIFG Services.

damages to "make her whole for . . . [lost] LTI compensation" and she asks the Court to issue "whatever orders are necessary to restore plaintiff all of her LTI compensation." (See prayer for relief ¶¶ (c) and (f).)

### B.    The Terms of the LTI Plans

During the course of her employment with CIFG Services, plaintiff received three types of LTI awards – stock options, restricted stock and performance unit awards.  The stock option awards and restricted stock awards were granted by CIFG Holding. (Brown Decl. Exhs. A, B, C.)  The performance unit awards are granted by CIFG Services. (Brown Decl. Exhs. D, E.)  The types of LTI awards given to plaintiff varied from year to year.

In 2004, plaintiff was granted an LTI award in the form of stock options under the 2003 CDC IXIS Financial Guaranty Holding 2003 Stock Option Plan (the "2003 Stock Option Plan").[2]  (complaint ¶ 46; Brown Decl. ¶ 6.)  Paragraph 23 of the 2003 Stock Option Plan contains a forum selection clause and choice of law clause that states:

> This Plan shall be governed by and construed in accordance with the laws of France.  The *Tribunal de Grande Instance* of Paris shall be exclusively competent to determine any claim or dispute arising in connection herewith.

(Brown Decl. Exh. A, emphasis added.)

In March 2005, plaintiff was awarded LTI "in a specified notional amount for calendar year 2004." (complaint ¶ 65.)  "On or about March 2006, CIFG provided Cully with the details of the award, which consisted of stock options, restricted stock, and performance units." (complaint ¶ 65; Brown Decl. ¶ 7.)  Awards of *performance units* were awarded to plaintiff in 2005 under the CIFG Services, Inc. Master Performance Unit Plan effective January 1, 2005

---

[2]  CIFG Holding was formerly named CDC IXIS Financial Guaranty Holding.  Its corporate headquarters has been at all times located at 31-33 rue de Mogador, Paris, France. (Brown Decl. Exhs. A, B, C.)

("Master PUP"), which has been amended from time to time.  (Brown Decl. ¶ 10; complaint ¶ 66.)  The *stock options* awarded to plaintiff in calendar year 2005 for employment year 2004 were awarded under the CIFG Holding Calendar 2004 Stock Option Plan ("2004 Stock Option Plan"), which was finalized in December 2006. (Brown Decl. ¶ 8.)  The *restricted stock* awarded to plaintiff in calendar year 2005 for employment year 2004 were awarded under the CIFG Holding Calendar 2004 Restricted Stock Plan ("2004 Restricted Stock Plan"), which was finalized in December 2006.  (Brown Decl. ¶ 9.)

Paragraph 22 of the 2004 Stock Option Plan provides as follows:

For so long as the Company is domiciled in France, this Plan shall be governed by and construed in accordance with the laws of France and the court of competent jurisdiction within the Court of Appeal of Paris shall be exclusively competent to determine any claim or dispute arising in connection herewith that is not or cannot be resolved by mediation or arbitration as provided herein.

In the event of any claim or dispute arising out of or relating to this Plan, or the breach thereof, and unless the parties shall have resolved such claim or dispute within ninety (90) days after written notice from one party to the other setting forth the nature of such claim or dispute, such claim or dispute shall be submitted to a mediator jointly selected by the parties for nonbinding, confidential mediation.  If such mediation does not result in resolution of such claim or dispute within one hundred and eighty (180) days from the date of such notice, in the event this Plan is governed at that time by French law, the parties may proceed to any and all remedies available to them in law or equity or, in the event this Plan is no longer governed at that time by French law, the parties will submit to binding arbitration in London, England or New York, New York, in this case of employees located in, respectively, Europe and the United States, in accordance with the arbitration rules then generally in effect in such location for such disputes. Judgment upon the award rendered by such arbitrator(s) shall be entered in any court having jurisdiction thereof upon the application of either party.

(Brown Decl. Exh. B, emphasis added)

Paragraph 20 of the 2004 Restricted Stock Plan (Brown Decl. Exh. C) sets forth verbatim paragraph 22 of the 2004 Stock Option Plan (id. Exh. B).

In March 2006, plaintiff was awarded LTI "in a specified notional amount for calendar year 2005." Complaint, ¶ 67. The LTI award for calendar year 2005 is in the form of performance units, which is governed by the Master PUP. (Brown Decl. ¶ 11.) The Master PUP, effective as of January 1, 2005, which provides for arbitration of disputes in paragraph 6(i) as follows:

> Arbitration Clause.  In the event of any claim or dispute arising out of or relating to this Plan, or the breach thereof, and unless the parties shall have resolved such claim or dispute within 90 days after written notice from one party to the other setting forth the nature of such claim or dispute, then such claim or dispute shall be submitted to a mediator jointly selected by the parties for nonbinding, confidential mediation. If such mediation does not result in resolution of such claim or dispute the parties will submit to binding arbitration in New York, New York, in accordance with the Commercial Arbitration Rules of the American Arbitration Association.  Judgment upon the award rendered by such arbitrator(s) shall be entered in any court having jurisdiction thereof upon the application of either party.

(Brown Decl. Exh. D, emphasis added)

### C. Plaintiff, as General Counsel, Knew the Terms of the Plans She Seeks to Enforce

Drafting of the LTI plans at issue for 2005 and thereafter began in late 2004. (complaint ¶ 71.) In her position as General Counsel at CIFG Services during the period 2004-2006, plaintiff participated in drafting the plans and the revisions thereto.  She alleges specifically that at the end of 2004, plaintiff was "responsible" for drafting the LTI plans. Id. Also, plaintiff concedes that she is familiar with the contents of the draft LTI plans as they existed prior to December 2005. (complaint ¶ 72.)

The complaint alleges that all subsequent post-2003 plans of CIFG Holding conform in substance to the 2003 Stock Option Plan, which is certainly the case as to the choice of law and forum selection clauses. (complaint ¶ 71.) Plaintiff seeks to enforce the terms of the draft LTI plans, which by her own admission are "in conformity with the 2003 Stock Option Plan." (complaint ¶ 77.)

Plaintiff apparently does not dispute the applicability of French law to the CIFG Holding LTI plans. Indeed, by letter dated April 18, 2007, plaintiff provided to defendants' an opinion from an expert in French law that certain purported changes to the draft LTI plans were invalid under French law. (complaint ¶ 83.) Cully further provided "signed agreements for the stock options and restricted stock, with hand-written changes to conform the agreements to French law." (complaint ¶ 83.)

D.    Conditions Precedent Have Been Fulfilled

Some of the CIFG Holding LTI plans at issue require that the parties first engage in mediation prior to seeking relief from the applicable court or arbitration panel. In September 2007, prior to the filing of this action, the parties had a mediation with former Magistrate Judge Kathleen Roberts at JAMS. The mediation was not successful. Thus, where applicable, the parties have fulfilled the mediation conditions precedent in the LTI plans.

Argument

## THE LTI AWARD CLAIMS AGAINST CIFG HOLDING
## AND CIFG SERVICES SHOULD BE DISMISSED

Insofar as the complaint alleges claims seeking damages and declaratory and injunctive relief against the two entities which established and are obligated under the plans, such claims cannot be litigated in this Court. The two stock option plans and the restricted stock plan of CIFG Holding provide that the claims relating to those plans shall be litigated only in the courts of France. The applicable performance unit plan of CIFG Services provides that the claims relating to that plan be arbitrated before the AAA in New York.

### A.    A Mandatory and Exclusive Forum Selection Clause Is Enforceable

It is well settled that an exclusive forum selection clause is presumptively valid in international transactions. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972); Brennen v. Phyto-Riker Pharmaceuticals, Ltd., 2002 WL 1349742, at *2 (S.D.N.Y. June 20, 2002). Here, the forum selection clauses in the three plans of CIFG Holding state unequivocally that the exclusive venue of "any claim or dispute arising in connection" with the plans shall be "exclusively" litigated in the appropriate competent court in France. (See, e.g., Brown Decl. Exh. B ¶ 22.) Such an exclusive forum selection makes sense given that the governing law is that of France and CIFG Holding's headquarters is in Paris. The fact that French law is codified (in French) makes it all the more appropriate that a French court resolve all of plaintiff's disputes over the LTI awards. (Indeed, the difficulty of resolving her claims against CIFG Holding is illustrated by the fact that plaintiff had to retain an expert in French law to present her position to CIFG Holding; see complaint ¶ 83.)

- 7 -

The presumptive validity of a forum selection clause may only be overcome if "enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." Bremen, 407 U.S. at 10. Forum selection clauses are unreasonable:

> (1) if their incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state.

Brennen, 2002 WL 1349742, at *2 – *3 (citing Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993)). None of these factors is present here.

In Brennen v. Phyto-Riker Pharmaceuticals, Ltd., defendants, in reliance on a forum selection clause in an employment contract, moved to dismiss the action for improper venue. Under the forum selection clause, the parties irrevocably submitted themselves to the exclusive jurisdiction of one of three courts to be determined at the sole discretion of defendants. Brennen, 2002 WL 1349742, at *3. Of the three courts listed in the forum selection clause, defendants chose the courts of Ghana, Africa. Id. The court upheld the forum selection clause and dismissed the action in order that the case could be brought before the courts of Ghana. In reaching its decision, the court determined that plaintiff had agreed to the clause when he entered into the employment agreement with the Ghana-based employer and had failed to demonstrate that the forum selection clause was unreasonable.

As in Brennen, the forum selection clauses in the 2003 Stock Option Plan, 2004 Stock Option Plan, and 2004 Restricted Stock Plan are all mandatory forum selection clauses calling for the exclusive jurisdiction of the *Tribunal de Grande Instance* of Paris for the 2003 Stock Option Plan and the Court of Appeal of Paris for the 2004 Stock Option Plan and 2004

Restricted Stock Plan. See Hongkong and Shanghai Banking Corp. v. Suveyke, 392 F.Supp.2d 489, 492 (E.D.N.Y. 2005) ("[T]he use of the word 'shall' is a clear indication of mandatory, rather than permissive language.")

Moreover, plaintiff cannot demonstrate that these LTI plans were either the result of fraud or overreaching or are inconvenient or unfair as plaintiff (1) is very familiar with the language of the LTI plans as she was involved in the drafting of the 2004 LTI plans and admits that they conform in substance to the 2003 Stock Option Plan, and (2) does not dispute the validity of the choice of law provision for French law contained within the forum selection clauses. In fact, courts of this circuit have previously enforced forum selection clauses where suits were to be governed by French law in the French courts. In both Ana Distribution, Inc. v. CMA-CGM (America) Inc., 329 F.Supp.2d 565, 568 (S.D.N.Y. 2004) and Sam Jin World Trading, Inc. v. CMA-CGM (America) Inc., 2004 WL 2496198, at *1 (S.D.N.Y. Nov. 3, 2004) the courts upheld forum selection clause for suits to be filed in France and noted that plaintiffs would not be deprived of their day in court under the French system as discovery is available in France. Moreover, plaintiff asks the court to apply those provisions of the 2003 and 2004 LTI plans that she believes are favorable to her case and has already retained an expert in French law. Plaintiff cannot seek the enforcement of what she deems to be the favorable portions of the LTI plans without also having to abide by the remainder of the plans, including the mandatory forum selection clauses.

Plaintiff also cannot demonstrate that it would be too costly and difficult to litigate the LTI-related claims in Paris, which is a far cry closer than Ghana. The "costs and difficulties" entailed in suing in France, "being but the obvious concomitants of litigation abroad, do not satisfy *The Bremen* [inconvenience] standard." Effron v. Sun Line Cruises, Inc., 67 F.3d

7, 10 (2d Cir. 1995) (citation omitted) (enforcing forum selection clause in cruise ship passenger's ticket requiring all suits be brought in Athens, Greece). Enforcement of the forum selection clauses also will not contravene the public policy of New York. Indeed, international comity dictates that American courts enforce international forum selection clauses "out of respect for the integrity and respect of foreign tribunals." Roby, 996 F.2d at 1362-63.

Finally, the forum selection clauses apply to all of the LTI-related claims. "The reach of a forum selection clause is not always limited to a claim for breach of contract containing the clause." Roby, 996 F.2d at 1361. "The appropriate inquiry is 'whether the scope of the forum selection clause extends to tort-based claims arising in conjunction with the contract claims governed by the forum selection clause.'" New Moon Shipping Co. v. Man B & W Diesel AG, 121 F.3d 24, 33 (2d Cir. 1997). As summarized by Judge Stein of this Court:

> [C]ircuit courts have held that a contractually-based forum selection clause will also encompass tort claims if the tort claims ultimately depend on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach of contract.
>
> Regardless of the differences in terminology, one common thread running through these various formulations is the inquiry whether the plaintiff's claims depend on rights and duties that must be analyzed by reference to the contractual relationship.

Direct Mail Prod. Serv. Ltd. V. MBNA Corp., 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000) (citations omitted).

The forum selection clauses in the CIFG Holding LTI plans broadly state that the entire "plan" shall be governed and construed by the laws of France and venued in specific courts located in Paris. Plaintiff cannot seek relief under claims of breach of contract and alternative theories of promissory estoppel, unjust enrichment and fraudulent inducement

without evoking the terms of the applicable LTI plans. Thus, the resolution of plaintiff's LTI-related claims will not only require the interpretation and application of the 2003 Stock Option Plan, 2004 Stock Option Plan and 2004 Restricted Stock Plan, but also arise out of the same operative facts as plaintiff's claims for breach of contract. See Brennen, 2002 WL 1349742 at *4 - *5 (applying forum selection clause to all of plaintiff's claims as they all arose out of the same operative facts and required the court to interpret the contract at issue). Therefore, CIFG Holding respectfully request that the Court dismiss all of plaintiff's LTI-related claims against it.[3]

### B.    A Mandatory Arbitration Clause Is Enforceable

The performance unit plan of CIFG Services provides that if mediation has failed (as is the case here), "the parties will submit to binding arbitration" in New York before the AAA under its Commercial Rules (Brown Decl. Exh. D, emphasis added). Although certain parts of the plan document has been revised both before and after plaintiff's last day on December 31, 2006, the arbitration clause has been a constant, and a similar clause was contained in the predecessor plan (Brown Decl. Exh. E). Since plaintiff seeks to enforce the terms of the plan, she must accept all of its terms and not selectively excise those she might not like.

Arbitration clauses in employment-related contracts are generally governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq. DuBois v. Macy's East Incorporated, 2007 WL 3193169, at *3 (E.D.N.Y. July 13, 2007). The FAA "mandates that contract

---

[3] It is plaintiff's position set forth in the complaint and articulated at the initial pretrial conference that all of the corporate defendants should be deemed to be her employer under the so-called "joint employer" doctrine. That being the case, by reason of the exclusive forum selection clause, plaintiff must concede that all of the claims arising from the CIFG Holding Stock option and restricted stock plans against all corporate defendants should be dismissed under plaintiff's theory of the case. (Defendants contest the "joint employer" theory. It is their position that only the single entity which established and is obligated under the respective plans is a proper defendant as to the LTI claims. In either case, the LTI-related claims should be dismissed as against all defendants. We submit plaintiff can not "have it both ways.")

provisions to arbitrate disputes 'arising out of' the contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The United States Supreme Court has emphasized that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (citations omitted).[4]

Furthermore, the FAA provides for an order compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement, 9 U.S.C. §§3, 4, and permits the issuance of a stay of judicial proceedings if a court is satisfied that the issue before it can be referred to arbitration under an agreement to arbitrate. 9 U.S.C. § 3. So strong is the policy favoring arbitration that enforcement of an arbitration agreement "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Tech., Inc. v. Communications Workers, 475 U.S. 643, 650 (1986) (citations omitted); see also Townsend v. Smith Barney Shearson Inc., 906 F. Supp. 153, 156 (W.D.N.Y. 1995). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

This Court maintains the authority to determine whether parties have agreed to arbitrate. DuBois, 2007 WL 3193169 at *4. The Second Circuit utilizes a two-part test for determining the arbitrability of claims which do not involve federal statutes: "(1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at issue comes within the

---

[4] To the extent the FAA might not apply, CPLR 7501 and 7503 also provides for enforcement of arbitration clauses and staying or dismissing actions when arbitration is compelled.

scope of the arbitration agreement." DuBois, 2007 WL 3193169, at *4 (quoting Baldeo v. Darden Restaurants, Inc., 2005 WL 44703, at *3 (E.D.N.Y. Jan. 11, 2005).

"An arbitration agreement's validity is a matter of state law." Sherr v. Dell, Inc., 2006 WL 2109436, at *2 (S.D.N.Y. July 27, 2006). In this instance, New York law governs the question of whether an agreement to arbitrate exists. DuBois, 2007 WL 3193169, at *4. "The majority of case law on the issue of whether the parties agreed to arbitrate goes not to whether an agreement to arbitrate or opt-out was *executed* by the parties, but to whether there was *fraud or duress* in the formation of the arbitration contract." Id. (emphasis in original). Again, plaintiff cannot claim there was fraud or duress in the formation of the arbitration clause of the Master PUP. Plaintiff, while serving as general counsel of CIFG Services, was familiar with the terms of the Master PUP and the prior plan of CDC IXIS Financial Guaranty Services Inc.

Courts in the Second Circuit overwhelmingly rule in favor of arbitration when faced with the decision whether to compel arbitration. See Gold v. Deutsche Aktiengessellschaft, 365 F.3d 144, 147 (2d Cir. 2004) (objection to arbitration based on claim that arbitration agreement was incorporated by reference in a document plaintiff had not read dismissed); Baldeo, 2005 WL 44703 at *7 (claim that arbitration agreement was unclear and thus the contract lacked mutual assent dismissed); Debono v. Washington Mutual Bank, 2006 WL 3538938, at *3 (S.D.N.Y. Dec. 8, 2006) (claim that arbitration agreement is null because plaintiff did not receive the first two pages of the three page arbitration agreement dismissed). "To determine whether plaintiff should be compelled to arbitrate, the Court must look for a " 'manifestation or expression of assent ... by word, act, or conduct which evinces the intention of the parties to contract.'" DuBois, 2007 WL 3193169, at *5 (quoting Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004) (quoting 22 N.Y.Jur.2d Contracts § 29). "The totality of

the parties' acts, phrases and expressions must be considered, along with 'the attendant circumstances, [the] situation of the parties, and the objectives they were striving to attain.'" DuBois, 2007 WL 3193169, at *5 (quoting Lumhoo v. Home Depot USA, Inc., 229 F.Supp.2d 121, 161 (E.D.N.Y. 2002) (citations omitted)).

Plaintiff seeks to receive her performance unit awards for 2004, 2005 and 2006 under the Master PUP. As with the stock-related LTI plans of CIFG Holding, plaintiff was familiar with the terms of the 2003 Master PUP and various drafts of the Master PUP, which always contained the arbitration clause at issue. Again, plaintiff asks the Court to enforce the portions of the Master PUP that she claims favor her, while ignoring the terms of the plan requiring arbitration. Plaintiff, through her claims and actions, has demonstrated her recognition that the parties are governed by the Master PUP. She must abide by all portions of the Master PUP, including the arbitration clause. Additionally, plaintiff's claims regarding her awards under the Master PUP clearly fall within the scope of the arbitration clause.

Plaintiff may assert, as to the CIFG Holding 2004 Stock Option and Restricted Stock Plans, that the arbitration provision, and not the exclusive forum clause should apply, since after October 1, 2007, CIFG Holding was no longer domiciled in France and she may argue that therefore French law and the exclusive jurisdiction clause do not apply. This argument is flawed. Plaintiff's claims as to the CIFG Holdings all arose prior to the filing of this action, at a time when CIFG Holding was domiciled in France and French law applied. The redomiciliation occurred after the claims arose, after this action was commenced and even after the unsuccessful mediation was held. Defendants suggest that the formal redomiciliation not withstanding, under any applicable New York choice of law principles, French law would still govern plaintiff's rights and obligations under the CIFG Holding plans and the arbitration clause is not applicable

(". . . in the event this plan is no longer governed . . . by French law, the parties will submit to arbitration"). If French law does not apply, plaintiff must still arbitrate the claims against CIFG Holding.

Conclusion

For the forgoing reasons, defendant CIFG Holding respectfully requests that all claims against it related to plaintiff's awards under its LTI plans be dismissed, and defendant CIFG Services, Inc. respectfully requests that all claims against it related to plaintiff's awards under its performance unit plan be dismissed and plaintiff be directed to arbitrate those claims before the AAA in New York.

Dated: December 7, 2007                Respectfully submitted,

                                       EPSTEIN BECKER & GREEN, P.C.

                                       By: _____
                                           Kenneth J. Kelly (KK-4195)
                                           Lori A. Jordan (LJ-0853)
                                       250 Park Avenue
                                       New York, New York 10177
                                       (212) 351-4500
                                       Attorneys for Defendants