EXHIBIT E

CDC IXIS FINANCIAL GUARANTY SERVICES INC.

PERFORMANCE UNIT PLAN

1. **Purposes**. The purposes of this Performance Unit Plan (the "Plan") are to assist CDC IXIS Financial Guaranty Services, Inc., a Delaware corporation (the "Company") and its affiliates within the holding company group held by CDC IXIS Financial Guaranty Holding, a French corporation ("CIFG Holding") (collectively, the "CIFG Group") in attracting, retaining, and motivating employees whose performance can impact the long term success of the CIFG Group by providing competitive compensation opportunities that reward outstanding performance.

2. **Definitions**. In addition to the terms defined in Section 1 hereof, the following terms used in the Plan shall have the meanings set forth below:

    (a) "Board" means the Board of Directors of the Company.

    (b) "Cause" means (1) a Participant's willful failure to perform his or her duties (excluding any action taken and any decision not to act if such action is taken or such decision is made in the good faith belief that it is in the furtherance of the business of the Company); (2) gross negligence or gross malfeasance in the performance of the Participant's duties; (3) a final finding by a court or other judicial body of competent jurisdiction that a Participant is guilty of a felony under the laws of the United States or any state thereof, if, as a result of such finding the Board determines that the continued employment of the Participant by the Company or any subsidiary or affiliated company would be contrary to the best interests of the Company.

    (c) "CIFG" means CDC IXIS Financial Guaranty, a French corporation, the sole shareholder of the Company.

    (d) "Continuous Status as a Participant" means that there shall have been no termination of the employment relationship between a Participant and the Company. As used herein, the term "termination" shall not include (1) any transfer between the Company and an affiliated company, or (2) a leave of absence or retirement. "Leave of absence" shall include medical leave, military leave, or other authorized personal leave; "retirement" means a Participant who is at least 55 years of age at the time that he or she voluntarily ceases to be an employee of the Company.

    (e) "Disability" means injury or illness that prevents a Participant from the performance of the duties of his or her position, as determined by the Board.

    (f) "Effective Date" means the commencement date set forth in Annex 1, attached hereto and incorporated herein by this reference, in respect of a given annual series of Units granted pursuant to the Plan.

5/16/2003

(g) "Net Income Before Taxes" means, for each fiscal year, or other period determined by the Board, the net consolidated earnings or losses of CIFG Holding before income taxes, as determined in the sole discretion of the Board, whose determination shall be conclusive and binding on all interested parties, including Participants..

(h) "Participant" means an eligible employee who has been designated by the Board to receive Units for a specified Performance Period.

(i) "Performance Period" means in respect of a given annual series of Units granted pursuant to the Plan, and unless otherwise determined by the Board at or after the Effective Date, the period of three consecutive years during which the value of a Unit shall be measured. Notwithstanding the foregoing, a period of time shorter than the Performance Period may be used for such measurement in certain cases, including a Participant's Termination of Employment, as specified in Section 5(d).

(j) "Prohibited Actions" means that without the prior written consent of the Company, a Participant will not

(1) directly or indirectly engage in, own, manage, operate, control or otherwise participate in any entity in the financial guaranty insurance business or otherwise deemed by the Board to be a competitor of the CIFG Group, whether as principal, agent, employee, employer, consultant, advisor, independent contractor, stockholder, director, officer, partner, joint venturer or in any other individual or representative capacity during the Performance Period, provided, however, that the mere ownership by a Participant of not more than one percent (1%) of the equity securities of any such competitor shall not be deemed to be a Prohibited Action so long as a Participant does not actively participate in the business or management of such entity in any manner whatsoever;

(2) employ, solicit for employment, or advise or recommend that any third party employ or solicit for employment any person who is or was an employee of the Company during the Performance Period;

(3) directly or indirectly solicit the clients of the CIFG Group in an attempt to provide goods or services of the type that it provides, or in an attempt to persuade such clients to cease to do business with the CIFG Group;

(4) disclose, furnish or make accessible to any person or entity, or use other than for the benefit of the CIFG Group, any confidential or proprietary information obtained or developed while in the employ of the Company. As used herein, confidential or proprietary information shall not apply to information that becomes generally known or available to the public other than as a result of disclosure or other breach of the terms hereof by Participant, or any disclosure of confidential information by Participant that is expressly required by judicial or administrative order, provided that the Participant shall have notified the Company as promptly as practicable of the existence, terms and circumstances of any order, subpoena or other process issued by a court or administrative authority that may require to the disclosure of any such confidential

information, and shall have cooperated with the Company, if applicable, in taking legally available steps to resist or narrow such requirement and to obtain a protective order or other reliable assurance that confidential treatment be given to the information to be disclosed.

(k) "Unit" means a nominal grant of one U.S. dollar ($1.00) granted to a Participant subject to the terms and conditions of the Plan, to be monetized and paid to such Participant in an amount derived from the Valuation Formula. As used herein, a Unit is a specific accounting device for use in connection with the Plan. A Unit does not represent a right of ownership in the equity or the assets of the Company or its affiliates in the CIFG Group, is not transferable and has no value outside the context of the Plan.

(l) "Valuation Formula" means the method of determining the value of a Unit, as set forth in Annex 1, attached hereto and incorporated herein by this reference. A separate and distinct Valuation Formula shall be set forth for each annual series of Units granted pursuant to this Plan.

3. **Administration.**

(a) Board Authority. Unless otherwise determined by the Conseil de surveillance (Supervisory Board) of CIFG, the Board shall administer the Plan in accordance with its terms, and shall have full power and authority to construe and interpret the Plan, to prescribe, amend and rescind the terms and conditions hereof, and to make all other determinations necessary or advisable for the administration of the Plan, provided however, that no amendment, rescission or termination of the Plan shall impair the rights of any Participant, unless mutually agreed in a writing signed by such Participant and the Company. The actions of the Board with respect to the Plan shall be conclusive and binding upon all persons having an interest in the Plan.

(b) Delegation. The Board may delegate any of its rights, duties, and functions in respect of the Plan to a designated officer of the Company, in which case references to the Board shall be deemed to include such delegate or delegates. The foregoing notwithstanding, only the Board or the Compensation Committee of CIFG Holding shall have the authority to (1) authorize the participation in the Plan by officers of the Company and actions taken in respect of Units held by officers of the Company, or (2) make determinations relating to the calculation of Net Income Before Taxes.

(c) Limitation of Liability. In their exercise of authority under the Plan, the members of the Board, and any person acting as a delegate of the Board, shall be entitled in good faith, to rely and act upon any report or other information furnished to him or her by any officer or other employee of the Company or affiliated company, the Company's independent certified public accountants, or any executive compensation consultant, legal counsel, or other professional retained by the Company to assist in the administration of the Plan. Neither a member of the Board nor any person acting as a delegate of the Board shall be personally liable for any action, determination, or interpretation taken or made in good faith with respect to the Plan, and each such person shall, to the extent permitted by law, be fully indemnified and protected by the Company with respect to any such action, determination, or interpretation.

4. **Eligibility**. Units may be granted only to employees of the Company, as designated and approved by the Board.

5. **Grants and Settlement of Units**.

   (a) <u>Grant of Units</u>. Subject to the terms and conditions of the Plan, the Board may select eligible employees to whom Units shall be granted, specify the number of Units to be granted to each such eligible employee, and specify the Performance Period to which such Units relate. Such grants shall be made not later than 120 days after the beginning of a specified Performance Period. The Board shall determine in its sole discretion whether a given employee who meets the eligibility requirements of Section 4 for any Performance Period will receive a grant of Units, and if so, the number of Units that may be granted to any such eligible employee for any Performance Period. The Board may consider an employee's past performance, current or future responsibility level, individual ability to impact the future success of the Company, or other factors and circumstances deemed relevant to such determinations. Such grants and the factors and circumstances considered by the Board in making such determinations need not be uniform or consistent for all employees or any identifiable group of employees within a given Performance Period or otherwise.

   (b) <u>Determination of Unit Value</u>. The value of a Unit will be determined as of each anniversary of the Performance Period to which it pertains. The value of a Unit as of each such anniversary shall be determined in accordance with the Valuation Formula. Unless circumstances require otherwise, annual determinations of Unit value shall be made within 45 days after the completion of the annual audit by the Company's independent certified public accountants.

   Notwithstanding the foregoing, the Board may adjust the value of Units at any time as a result of events having a material effect on the financial results of the CIFG Group during the Performance Period that are not directly related to its business activity or performance.. Such events may include, without limitation, a change in law or accounting standards. It is expected that such events will, by their nature, be rare and that any such adjustment will only be made after careful consideration of the fairness of such adjustment to the Company and the Participants in view of the objectives of the Plan.

   (c) <u>Vesting of Units; Forfeiture of Unvested Units</u>. One-third of a Participant's Units granted for a Performance Period will vest at the close of business on each anniversary of the relevant Effective Date (which vesting may include fractional Units). In the event of a Participant's retirement, such Participant's unvested Units shall continue to vest at the rate of one-third per year, provided that the Participant does not engage in any Prohibited Actions. Units granted to a Participant that have not vested in accordance with this Section 5(c) at the time of any termination of Continuous Status as a Participant shall be forfeited as of the date of such termination. Notwithstanding the foregoing, in the event of termination of Continuous Status of a Participant due to death, all of the Participant's Units granted for a Performance Period then in progress shall vest as of such date.

(d) <u>Disbursement</u>.

(1) <u>Disbursement</u>. Except as otherwise set forth below, the value of a Participant's vested Units shall be determined in accordance with paragraph 5(b) and disbursed as soon as reasonably practicable after the end of the Performance Period to which such Units relate.

(2) <u>Voluntary or Involuntary Termination Excluding Cause</u>. In the event of voluntary or involuntary termination of Continuous Status as a Participant prior to the end of a Performance Period (excluding termination for cause), the value of such Participant's vested Units will determined as of the last day of the fiscal year immediately preceding the date of termination, and paid to such Participant following the third anniversary of the Effective Date to which the Units pertain.

(3) <u>Termination for Cause</u>. In the event of termination of Continuous Status as a Participant for cause prior to the end of a Performance Period, such value will be equal to the lower of (1) the value of such vested Units, determined as of the last day of the Performance Period, and (2) the value of such vested Units, determined as of the last day of the fiscal year immediately preceding such date of termination.

(4) <u>Death</u>. In the event of termination of Continuous Status as a Participant as a result of death prior to the end of a Performance Period, the value of such Participant's Units will be determined as of the last day of the fiscal year immediately preceding the date of death and paid to the Participant's estate as soon as reasonably practicable after such value is determined.

(5) <u>Disability</u>. In the event of termination of Continuous Status as a Participant prior to the end of a Performance Period as a result of disability, the value of such Participant's Units will be determined as of the last day of the fiscal year immediately preceding the date of disability and paid to the Participant as soon as reasonably practicable after such value is determined.

(e) <u>Deferral</u>. Notwithstanding paragraph (d) above, a Participant may irrevocably elect, not later than June 30 of the third year of a given Performance Period to defer payment of all or any portion of the amount otherwise payable under paragraph (d) with respect to Units granted for such Performance Period; provided, however, that no such election shall be effective if the Participant's termination of Continuous Status as a Participant occurs prior to the end of such Performance Period. Any such election shall be made in accordance with the terms and conditions of the CIFG Services, Inc. Deferred Compensation Plan, if any, in which event any amount so deferred shall be credited to the Participant's Deferred Compensation Account under such Plan and otherwise be subject to all of the terms and conditions thereof.

6. <u>General Provisions</u>.

(a) <u>No Rights to Participate or Receive Grants or Payouts; No Rights as Stockholder</u>. Until the Board has determined to grant Units to a Participant, no employee shall have any right or entitlement to participate in this Plan or receive a grant of Units hereunder, and the granting of Units hereunder shall not be construed as a commitment that any payment will be made with respect to such Units except in accordance with the terms of the Plan. No Participant shall have any rights of a stockholder of the Company or its affiliates as a result of the grant of Units under the Plan.

(b) <u>No Rights to Employment</u>. Nothing contained in the Plan or in any documents related to the Plan and no grant of Units shall (1) confer upon any employee or Participant any right to continue as a Participant or in the employ of the Company or a subsidiary, (2) constitute any contract or agreement of employment, or (3) interfere in any way with the right of the Company or a subsidiary to reduce such person's compensation, to change the position held by such person or to terminate the employment of such employee or Participant, with or without cause.

(c) <u>Non-Transferability</u>. Units and other rights under the Plan shall not be transferable by a Participant except upon a Participant's death by will or the laws of descent and distribution, and shall not otherwise be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge, and any such attempted action shall be void.

(d) <u>Unfunded Plan</u>. The Plan is intended to constitute an "unfunded" plan for incentive and deferred compensation. With respect to any amount payable to a Participant under the Plan, nothing contained in the Plan (or in any agreement or other documents related thereto), nor the creation or adoption of the Plan, the grant of any Award, or the taking of any other action pursuant to the provisions of the Plan shall give any such Participant any rights that are greater than those of a general creditor of the Company; provided, however, that the Board may authorize the creation of trusts or make other arrangements to meet the Company's obligations under the Plan, which trusts or other arrangements shall be consistent with the "unfunded" status of the Plan unless the Board determines otherwise.

(e) <u>Tax Withholding</u>. The Company and any subsidiary shall have the right to deduct from any disbursement payable hereunder an amount equal to federal, state, local, or foreign taxes required to be withheld with respect to such disbursement.

(f) <u>Governing Law</u>. The Plan and all related documents shall be governed by, and construed in accordance with, the laws of the State of New York. If any provision hereof shall be held by a court of competent jurisdiction to be invalid and unenforceable, the remaining provisions of the Plan shall continue to be fully effective.

(g) <u>Amendment and Termination</u>. The Board may, at any time, terminate or, from time to time, amend, modify, or suspend the Plan and agreements under the Plan, provided that no such action shall materially and adversely affect the rights of a Participant with respect to previously granted Units without the consent of such affected Participant. If the Plan is terminated with respect to future appreciation on outstanding

Units, the Units will then be deemed fully vested and their then current value based on the prior fiscal quarter will be paid by the Company as soon as is practicable. Unless earlier terminated hereunder, the Plan will terminate at such time that the Company has no further rights or obligations under the Plan.

(h) <u>Arbitration Clause</u>. In the event of any claim or dispute arising out of or relating to this Plan, or the breach thereof, and unless the parties shall have resolved such claim or dispute within 90 days after written notice from one party to the other setting forth the nature of such claim or dispute, then such claim or dispute shall be submitted to a mediator jointly selected by the parties for nonbinding, confidential mediation. If such mediation does not result in resolution of such claim or dispute, the parties will submit to binding arbitration in New York, New York, in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Judgment upon the award rendered by such arbitrator(s) shall be entered in any court having jurisdiction thereof upon the application of either party.

IN WITNESS WHEREOF, the Board of Directors approved this Participation Unit Plan pursuant to a resolution as of the ___ day of April, 2004.

## Annex 1

THE EFFECTIVE DATE IS MARCH 15, 2004 FOR THE PERFORMANCE PERIOD COMMENCING JANUARY 1, 2004 AND ENDING DECEMBER 31, 2006

### VALUATION FORMULA

Definitions:

The "First Year" is 2004.
The "Second Year" is 2005.
The "Third Year" is 2006.
The "First Year Target" is USD 25,083,000.
The "Second Year Target" is USD 55,576,000.
The "Third Year Target" is USD 97,696,000.
The "Interest Factor" is 106.75%.
The "Cap" is USD 1.50.
The "First Year IBT" is the First Year fiscal year Income Before Taxes expressed in USD.
The "Second Year IBT" is the Second Year fiscal year Income Before Taxes expressed in USD.
The "Third Year IBT" is the Third Year fiscal year Income Before Taxes expressed in USD.
The "Two-year Total" is the sum of the First Year IBT and the Second Year IBT.
The "Three-year Total" is the sum of the Two-year Total and the Third Year IBT.
The "Performance Period Target" is the sum of the First Year Target, the Second Year Target, and the Third Year Target.
The "First Year Floor" is initially zero and may be reset as described below.
The "Second Year Floor" is initially zero and may be reset as described below.
The "Actual Floor" at any point in time is the larger of the First Year Floor and the Second Year Floor, however if the Floor so computed is larger than the Cap, the Floor will equal the Cap.

If at the end of the First Year, the First Year IBT is greater than the First Year Target, then the First Year Floor will be reset to the larger of USD 0.333333 and the First Year IBT divided by the Performance Period Target.

At the end of the Second Year, the Second Year Floor will be reset to the largest of (A), (B), and (C), where:
  If the Second Year IBT is greater than the Second Year Target, then (A) is the sum of USD 0.333333 and the First Year Floor, otherwise (A) is zero.
  If the Second Year IBT is greater than the Second Year Target, then (B) is the sum of the Second Year IBT divided by the Performance Period Target and the First Year Floor, otherwise (B) is zero.

8

If the Two-year Total is greater than the sum of the First Year Target and the Second Year Target, then (C) is the Two-year Total divided by the Performance Period Target, otherwise (C) is zero.

The Payout Amount is the smaller of the Cap and (D), where (D) is the greater of the Three-Year Total divided by the Performance Period Target times the Interest Factor and the Actual Floor.