UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

KATHLEEN G. CULLY,

                  Plaintiff,

        - against -

CIFG HOLDING, CIFG GUARANTY,
CIFG EUROPE,
CIFG SERVICES, INC., CIFG
ASSURANCE NORTH AMERICA,
INC., and JACQUES ROLFO

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

07 Civ. 8195 (PKC)

ECF CASE

Declaration of Emmanuel Noirot

EMMANUEL NOIROT, under penalty of perjury, affirms and states as follows:

1.      I graduated in law at the University of *Paris I Panthéon-Sorbonne* (June 1999) and have a post-graduate degree in Employment Law from the University of *Paris II Panthéon-Assas* (June 2000). I have been working for 8 years in employment department of law firms in Paris and qualified on February 2002 as *Avocat à la Cour*, Paris Bar. I have been awarded *Meilleur Jeune Avocat Conseil d'Entreprise* on July 2002 by the *Association des Avocats Conseils d'Entreprise*. I specialize in employment and incentive law and litigate before French courts. I am currently senior associate in SCP Joseph Aguera & Associés, a French employment specialist law firm.

Exclusive competence of the *Conseil de Prud'hommes*

2.      The *Tribunal de Grande Instance* is the ordinary tribunal in France having jurisdiction as a district court, it is a court of first instance. Pursuant to Article R. 311-1 of the Judicial Organization Code ("*Code de l'organisation judiciaire*"), the Tribunal de Grande Instance has in principle jurisdiction on all cases which are not attributed to another jurisdiction because of the nature of the case or the amount of the claim. Although the *Tribunal de Grande Instance* named in the CIFG Stock Option Plan 2003 is a court of general jurisdiction, its jurisdiction in ousted if (as in this case) a more specialized court has jurisdiction over a claim. Pursuant to Article L. 511-1 of the French labor code ("*Code du travail*") indeed, the *Conseils de Prud'hommes* are the competent courts in France for

adjudicating individual conflicts and disputes that arise between employees and employers in the

private sector in relation to an employment contract and certain other contracts considered in the same

category as employment contracts.

           3.     This exclusive competence applies whatever the amount of the claim and even

though an agreement between the parties denies the competence of the *Conseil de Prud'hommes*. The

French labor code prohibits indeed the selection forum provision in its Article L. 511-1 paragraph 6

which states that any contractual derogation to the competence rule of the *Conseil de Prud'hommes* is

deemed not written.

           4.     This prohibition of forum selection provision is restated in Article R. 517-1 of

the French labor code:

> "The *Conseil de Prud'hommes* having jurisdiction to hear a case is the
> one in the territory of which the establishment is located or is carried out
> work.
> If the work is carried out apart from any establishment or in residence,
> the request is carried in front of the *Conseil de Prud'hommes* of the
> residence of the employee.
> The employee can always approach the *Conseil de Prud'hommes* of the
> place where the employment contract was entered into or that of the
> place where the employer is established.
> Any clause which directly or indirectly derogates from the provisions
> above is deemed not written".

Pursuant to the last paragraph of Article R. 517-1 of the French labor code, French courts consider

forum selection provisions null and void.

           5.     The exclusive competence of the *Conseil de Prud'hommes* to appraise

employment matters is a fundamental principle of French labor law.

           6.     On the basis of this exclusive competence of the *Conseil de Prud'hommes*

over individual employment matters, the *Cour de cassation* (French Supreme Court) held on June 21,

2005, that disputes between employers and employees relating to stock options are linked to the

employment agreement and fall into the scope of competence of the *Conseil de Prud'hommes* on the

basis of Article L. 511-1 of the French labor code[1].

---

[1] This decision is referred as follows : *Cassation Sociale, 21 juin 2005 FS-PB, Société Unilog c/. Quelquejay. N°02.45479.* http://www.legifrance.gouv.fr/WAspad/Visu?cid=132464&indice=1&table=CASS&ligneDeb=1

7.    It is important to note that even though the stock option gives rise to an option agreement or a stock option plan, both distinct from the employment contract, the *Cour de cassation* does consider that the stock option is "incidental to the employment contract", that justifies the exclusive competence of the *Conseil de Prud'hommes*.

8.    This decision has been commented on by the authorized publication *Revue de Jurisprudence Sociale Francis Lefebvre*[2] which state that "the wording of the solution of the decision demonstrates that it is general: all disputes relating to stock options between an employer and an employee must be filed before the *Conseil de Prud'hommes*".

9.    On the basis of this decision, it is unsure that a French tribunal would admit the application of the forum selection provision of the CIFG Stock Option Plan 2003 should apply to the benefit of the *Tribunal de Grande Instance*.

<u>Validity of the forum selection provision under French law</u>

10.    Notwithstanding the exclusive competence of the *Conseil de Prud'hommes* affecting the legality of the forum selection provision appointing the *Tribunal de Grande Instance* of Paris, there are serious doubts on the validity of the forum selection provision, as a contractual provision, because the consent of Kathleen Cully on the forum selection provision is not evidenced by the CIFG Stock Option Plan 2003.

11.    Beyond the specificities of French employment law described above which relate to the legality of the forum selection provision, the application of this provision also depends on its validity *per se*.

12.    Under French law, the validity of the selection forum provision shall be determined in accordance with the law chosen by the parties.  The validity of the forum selection provision must be appraised under French law because it is the law governing the Stock Option Agreement dated January 30, 2004 and CIFG Stock Option Plan 2003.  Professor Cadiet sets out that the legality of the forum selection provision must be determined according to the rules of the *lex fori* (in this case, US laws) while the validity of the forum selection provision must be determined pursuant

---

[2] *Revue de Jurisprudence Sociale Francis Lefebvre*, October 2005 n°1014 page 717.

to the law chosen by the parties which may be different from the *lex fori* (in this case, French law)[3].

Professor of Law Loussouarn, Professor of Law Bourel and Professor of Law De Varreilles-Sommières confirm and state that:

> "The forum selection provision is a contractual provision and as such, the *lex autonomous* i.e. the governing law chosen by the parties, provides the conditions of validity of the agreement, notably with regard to the lack of consent which may affect the agreement"[4].

13.    Consequently, the competent jurisdiction may indeed have to apply French law as the law chosen by the parties to determine whether the forum selection provision was validly accepted by both parties.

14.    Under French law, the validity of the agreement relating to a forum selection provision is subject to the civil formal conditions.  Pursuant to Article 1108 of the French civil code ("Code civil"):

> "Four requisites are essential for the validity of an agreement:
> The consent of the party who binds himself;
> His capacity to contract;
> A definite object which forms the subject-matter of the undertaking;
> A lawful cause in the obligation."

These requisites do illustrate the general principle of contractual loyalty which requires notably that each party acts in good faith.

15.    With respect to forum selection provisions, Professor of Law Cadiet state that:

> "The provision must have been precisely specified and shall be apparent in the undertaking of the contracting party to whom it is opposed, so that it is possible to deem that the provision was validly accepted".

16.    The *Cour de cassation* rendered on June 30, 1992 a decision against the validity of a forum selection provision as it was not specified in a commercial agreement between a French company and a US company but only referred to in the general conditions *(Cassation Civile 1ère, Société Verdol c/. Société General Industrial and Engineering Supplies n°90.21491)*.  Moreover, in this case, the contracting party to whom the clause was opposed knew the existence of this selection forum provision due to a long business relationship; however it did not explicitly accept the selection

---

[3] Litec, Droit judiciaire privé, Loïc Cadiet, 2nd edition, n°679, (comment 109, p.298).
[4] *Précis Dalloz, Droit international privé*, 9th edition, 2007, n°454-2 p.631.

forum provision. The *Cour de cassation* held that the selection forum provision was not enforceable because the agreement did neither refer directly nor indirectly to this selection forum provision.

17.    The Stock Option Agreement signed by Kathleen Cully on January 30, 2004 does not specify that the *Tribunal de Grande Instance* of Paris will be competent to hear any case arising from the plan. It only provides that French law applies which is strictly different and does not trigger the jurisdiction of French tribunals.

18.    The agreement between Kathleen Cully and CIFG which governs the options granted to Kathleen Cully does not refer to any forum selection provision. Therefore, based on Article 1108 of the French civil code and one the ruling of the Cour de cassation dated June 30, 1992 quoted above, one would note that Kathleen Cully who only signed the Stock Option Agreement did not agree with the forum selection provision inserted in the Stock Option Plan which is a different document.

19.    With respect to stock options plans, French tribunals require to enforce the rules of these plans that they were known by the optionee before he/she enters into the stock option agreement and that they were signed by him/her. This position of the *Cour de cassation* is summarized in its ruling *Cassation Sociale, May 14, 2007 n°05-45.281 Soustiel c/. Société Intuitive Surgical (n°1036D)*:

> "The court of appeal noted that the stock options plan of the company Intuitive Surgical Inc. was drafted in English, has been communicated to the employee whom signed it and the employee is fluent in English, then the provisions of the stock option plan are enforceable and bind the employee".

20.    The *Cour de cassation* requires that employers when implementing stock options plans fully inform their employees of the rules of the plan to ensure their future enforceability. Pursuant to Article 1108 of the French civil code, the judges must indeed verify that the employee has obviously given his/her consent. When the stock option plan is not drafted in French, the judges will verify that the employee was able to understand the rules of the plan, otherwise he/she could not be considered as having validly accepted the plan and his/her consent might be considered void. In any case, the judges will verify that the optionee signed any document which contains provisions that would bind him/her.

21.     As the forum selection provision which gives jurisdiction to a foreign tribunal is exceptional under French law, judges would certainly verify that the optionee explicitly agrees with this obligation.  As this obligation is not ordinary, judges will therefore require the signing of the optionee to evidence his agreement on the terms of this rule.  In this respect, the simple reference in the Stock Option Agreement to the Stock Option Plan does not evidence the optionee's agreement.

22.     Although the Stock Option Agreement results practically from the CIFG Stock Option Plan 2003, under French law Kathleen Cully did neither accept directly nor indirectly the forum selection provision.  Consequently, based on the legal rules governing (i) the consent of a party to a contract, (ii) the forum selection provision, (iii) the information due to optionees in stock options plans, and (iv) the necessary agreement of the optionees on the stock options plan's rules, I must conclude that this provision cannot legally bind Kathleen Cully.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 7, 2008, in Paris, France.

Emmanuel Noirot



**Legifrance**.gouv.fr

LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT                    Lundi 7 janvier 2008

ACCUEIL          ACCÈS THÉMATIQUE          RECHERCHE EXPERTE

**Les codes en vigueur**

  

◀ Précédent )    ( Suivant ▶    Retour ↰

**CODE DE L'ORGANISATION JUDICIAIRE**
(Partie Réglementaire - Décrets en Conseil d'Etat)

**Section I : Institution et compétence**

Article R311-1

*(Décret n° 2003-542 du 23 juin 2003 art. 9 Journal Officiel du 25 juin 2003 en vigueur le 15 septembre 2003)*

Le tribunal de grande instance connaît, à charge d'appel, de toutes les affaires pour lesquelles compétence n'est pas attribuée expressément à une autre juridiction, en raison de la nature de l'affaire ou du montant de la demande.

Article R311-2

*(Décret n° 81-318 du 1 septembre 1981 art. 1 Journal Officiel du 5 septembre 1981 en vigueur le 1er octobre 1981)*

*(Décret n° 85-422 du 10 avril 1985 art. 2 Journal Officiel du 13 avril 1985)*

*(Décret n° 98-1231 du 28 décembre 1998 art. 1 Journal Officiel du 30 décembre 1998 en vigueur le 1er mars 1999)*

*(Décret n° 2001-373 du 27 avril 2001 art. 2 Journal Officiel du 29 avril 2001 en vigueur le 1er janvier 2002)*

*(Décret n° 2003-542 du 23 juin 2003 art. 9 Journal Officiel du 25 juin 2003 en vigueur le 15 septembre 2003)*

*(Décret n° 2005-460 du 13 mai 2005 art. 19 Journal Officiel du 14 mai 2005)*

Dans les matières pour lesquelles il a compétence exclusive en raison de la nature de l'affaire, le tribunal de grande instance statue en dernier ressort lorsque le montant de la demande, déterminé dans les conditions prévues par le nouveau Code de procédure civile, est inférieur ou égal à 4 000 euros.

Article R311-3

*(Décret n° 81-500 du 12 mai 1981 art. 42 Journal Officiel du 14 mai 1981)*

*(Décret n° 2003-542 du 23 juin 2003 art. 9 Journal Officiel du 25 juin 2003 en vigueur le 15 septembre 2003)*

Conformément aux articles 1215 et 1221 du nouveau Code de procédure civile, un recours peut, en toutes matières, être formé devant le tribunal de grande instance contre les décisions du juge des tutelles et contre celles du conseil de famille.

### Article R311-4

*(Décret n° 2003-542 du 23 juin 2003 art. 9 Journal Officiel du 25 juin 2003 en vigueur le 15 septembre 2003)*

Sans préjudice de l'application de l'article 3 du Code de procédure pénale et de la loi n° 57-1424 du 31 décembre 1957, les tribunaux de grande instance et d'instance sont seuls compétents, en dernier ressort, ou à charge d'appel selon le cas, pour connaître de toute action en responsabilité délictuelle ou quasi-délictuelle tendant à la réparation des dommages de toute nature causés par un véhicule quelconque.

### Article R311-5

*(Décret n° 2003-542 du 23 juin 2003 art. 9 Journal Officiel du 25 juin 2003 en vigueur le 15 septembre 2003)*

L'article R311-4 ci-dessus ne porte pas atteinte aux dispositions particulières régissant le contentieux des accidents du travail.

Il ne déroge pas à la compétence des tribunaux de commerce pour la réparation des dommages causés par les navires de mer, les bateaux de navigation intérieure et tous engins de transport par voie d'eau.

### Article R311-6

*(Décret n° 2003-542 du 23 juin 2003 art. 9 Journal Officiel du 25 juin 2003 en vigueur le 15 septembre 2003)*

Les règles relatives à la compétence territoriale du tribunal de grande instance statuant en matière civile sont déterminées par le nouveau Code de procédure civile, et notamment par ses articles 42 à 52 ainsi que par les autres lois et règlements.

  

**Legifrance**.gouv.fr

LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

Lundi 7 janvier 2008

 ACCUEIL      ACCÈS THÉMATIQUE      RECHERCHE EXPERTE

## Les codes en vigueur

◀ Précédent )    ( Suivant ▶    Retour

### CODE DU TRAVAIL
### (Partie Législative)

**Chapitre Ier : Attributions et institution des conseils de prud'hommes**

#### Article L511-1

*(Loi n° 73-4 du 2 janvier 1973 Journal Officiel du 3 janvier 1973)*

*(Loi n° 79-44 du 18 janvier 1979 Journal Officiel du 19 janvier 1979)*

*(Loi n° 82-372 du 6 mai 1982 art. 1 Journal Officiel du 7 mai 1982)*

*(Loi n° 86-1319 du 30 décembre 1986 art. 13 I, II Journal Officiel du 31 décembre 1986)*

*(Loi n° 2004-1343 du 9 décembre 2004 art. 58 Journal Officiel du 10 décembre 2004)*

*(Abrogé par Ordonnance n° 2007-329 du 12 mars 2007 art. 12 I Journal Officiel du 13 mars 2007 en vigueur au plus tard le 1er mars 2008)*

Les conseils de prud'hommes, juridictions électives et paritaires, règlent par voie de conciliation les différends qui peuvent s'élever à l'occasion de tout contrat de travail soumis aux dispositions du présent code entre les employeurs, ou leurs représentants, et les salariés qu'ils emploient. Ils jugent les différends à l'égard desquels la conciliation n'a pas abouti.

Lorsqu'un organisme se substitue habituellement aux obligations légales de l'employeur, il peut être mis en cause aux côtés de celui-ci, en cas de litige entre l'employeur et les salariés qu'il emploie.
Les litiges relatifs aux licenciements ainsi qu'aux ruptures du contrat de travail intervenues dans les conditions prévues au troisième alinéa de l'article L. 321-6 relèvent de la compétence des conseils de prud'hommes. Les dispositions de l'article L. 122-14-3 sont applicables à l'ensemble de ces litiges ; les indemnités prévues à l'article L. 122-14-4 le sont également, sous réserve des dispositions de l'article L. 122-14-5.

Leur mission comme conciliateurs et comme juges s'applique également aux différends nés entre salariés à l'occasion du travail.

Néanmoins, ils ne peuvent connaître les litiges dont la connaissance est attribuée à une autre juridiction par la loi et notamment par le code de la sécurité sociale ou par le code rural pour ce qui concerne la mutualité sociale agricole et les accidents du travail, ou par

le code du travail maritime.

Les conseils de prud'hommes sont seuls compétents, quel que soit le chiffre de la demande, pour connaître des différends visés au présent article. Toute convention dérogatoire est réputée non écrite. Le taux de compétence en dernier ressort des conseils de prud'hommes est fixé par décret.

Les personnels des services publics lorsqu'ils sont employés dans les conditions du droit privé relèvent de la compétence des conseils de prud'hommes.

NOTA : Ordonnance 2007-329 2007-03-12 art. 14 : Les dispositions de la présente ordonnance entrent en vigueur en même temps que la partie réglementaire du nouveau code du travail et au plus tard le 1er mars 2008.

### Article L511-2

*(Loi n° 73-4 du 2 janvier 1973 Journal Officiel du 3 janvier 1973)*

*(Loi n° 79-44 du 18 janvier 1979 Journal Officiel du 19 janvier 1979)*

*(Abrogé par Ordonnance n° 2007-329 du 12 mars 2007 art. 12 I Journal Officiel du 13 mars 2007 en vigueur au plus tard le 1er mars 2008)*

Les conseils de prud'hommes doivent donner leur avis sur les questions qui leur sont posées par l'autorité administrative.
Ils exercent en outre les attributions qui leur sont confiées par des lois spéciales.

NOTA : Ordonnance 2007-329 2007-03-12 art. 14 : Les dispositions de la présente ordonnance entrent en vigueur en même temps que la partie réglementaire du nouveau code du travail et au plus tard le 1er mars 2008.

### Article L511-3

*(Loi n° 73-4 du 2 janvier 1973 Journal Officiel du 3 janvier 1973)*

*(Loi n° 79-44 du 18 janvier 1979 Journal Officiel du 19 janvier 1979)*

*(Loi n° 80-4 du 5 janvier 1980 Journal Officiel du 6 janvier 1980)*

*(Loi n° 82-372 du 6 mai 1982 art. 2 Journal Officiel du 7 mai 1982)*

*(Abrogé par Ordonnance n° 2007-329 du 12 mars 2007 art. 12 I Journal Officiel du 13 mars 2007 en vigueur au plus tard le 1er mars 2008)*

Il est créé au moins un conseil de prud'hommes dans le ressort de chaque tribunal de grande instance. Le ressort du conseil, s'il est unique, s'étend à l'ensemble de cette circonscription.

Pour des raisons d'ordre géographique, économique ou social, plusieurs conseils de prud'hommes peuvent être créés dans le ressort d'un tribunal de grande instance.

Les aérodromes dont l'emprise s'étend sur le ressort de plusieurs conseils de prud'hommes peuvent être rattachés par décret au ressort de l'un de ces conseils pour l'application des dispositions concernant la compétence territoriale en matière prud'homale.

Des décrets en Conseil d'Etat, pris après consultation ou avis du conseil général, du conseil municipal, du ou des conseils de prud'hommes intéressés, du premier président de la cour d'appel, ainsi que des organisations professionnelles et des organisations syndicales les plus représentatives sur le plan national, des chambres de commerce et d'industrie, de métiers et d'agriculture, portent création ou suppression des conseils et fixation, modification ou transfert de leur ressort et de leur siège. Chacun de ces organismes ou autorités est réputé avoir donné un avis favorable s'il n'a pas exprimé d'avis dans les trois mois suivant sa saisine.

NOTA : Ordonnance 2007-329 2007-03-12 art. 14 : Les dispositions de la présente ordonnance entrent en vigueur en même temps que la partie réglementaire du nouveau code du travail et au plus tard le 1er mars 2008.

### Article L511-4

*(Loi n° 73-4 du 2 janvier 1973 Journal Officiel du 3 janvier 1973)*

*(Loi n° 79-44 du 18 janvier 1979 Journal Officiel du 19 janvier 1979)*

*(Loi n° 82-372 du 6 mai 1982 art. 3 Journal Officiel du 7 mai 1982)*

*(Loi n° 2002-73 du 17 janvier 2002 art. 182 IV Journal Officiel du 18 janvier 2002)*

*(Abrogé par Ordonnance n° 2007-329 du 12 mars 2007 art. 12 I Journal Officiel du 13 mars 2007 en vigueur au plus tard le 1er mars 2008)*

Il est institué, auprès du garde des sceaux, ministre de la justice, et du ministre chargé du travail, un organisme consultatif dénommé conseil supérieur de la prud'homie. En font partie, outre les représentants des ministères intéressés, des représentants, en nombre égal, des organisations syndicales et des organisations professionnelles les plus représentatives au plan national.

Un décret en Conseil d'Etat détermine la composition, les attributions ainsi que les règles d'organisation et de fonctionnement du conseil supérieur de la prud'homie.
L'employeur est tenu de laisser aux salariés son entreprise, membres du conseil supérieur de la prud'homie, le temps nécessaire pour remplir leurs fonctions. Ce temps est assimilé à une durée de travail effectif au sens du deuxième alinéa de l'article L. 514-1. L'exercice des fonctions de membre du conseil supérieur de la prud'homie par un salarié ne saurait être la cause d'une sanction ou d'une rupture du contrat de travail par l'employeur.

NOTA : Ordonnance 2007-329 2007-03-12 art. 14 : Les dispositions de la présente ordonnance entrent en vigueur en même temps que la partie réglementaire du nouveau code du travail et au plus tard le 1er mars 2008.

  

À propos du site    Plan du site    Nous écrire    Établir un lien    Mise à jour des textes

**Legifrance** .gouv.fr
LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

Lundi 7 janvier 2008

 ACCUEIL     ACCÈS THÉMATIQUE     RECHERCHE EXPERTE

## Les codes en vigueur

◀ Précédent )    ( Suivant ▶    Retour ↰

### CODE DU TRAVAIL
**(Partie Réglementaire - Décrets en Conseil d'Etat)**

#### Section 1 : Compétence

**Article R517-1**

*(Décret n° 74-783 du 12 septembre 1974 (Décret 74-783 1974-09-12 JORF 15 septembre date d'entrée en vigueur 1ER octobre))*

*(Décret n° 74-783 du 12 septembre 1974 Journal Officiel du 15 septembre date d'entrée en vigueur 1er octobre 1974)*

*(Décret n° 75-1122 du 5 décembre 1975 Journal Officiel du 9 décembre 1975 date d'entrée en vigueur 1er janvier 1976)*

*(Décret n° 79-1022 du 23 novembre 1979 Journal Officiel du 2 décembre 1979)*

Le conseil de prud'hommes territorialement compétent pour connaître d'un litige est celui dans le ressort duquel est situé l'établissement ou est effectué le travail.
Si le travail est effectué en dehors de tout établissement ou à domicile, la demande est portée devant le conseil de prud'hommes du domicile du salarié.

Le salarié peut toujours saisir le conseil de prud'hommes du lieu où l'engagement a été contracté ou celui du lieu où l'employeur est établi.

Toute clause qui directement ou indirectement déroge aux dispositions qui précèdent est réputée non écrite.

**Article R517-1-1**

*(inséré par Décret n° 2000-462 du 29 mai 2000 art. 1 Journal Officiel du 31 mai 2000)*

Lorsqu'un travailleur est détaché en France, pour une période limitée, par une entreprise établie dans un autre Etat membre de la Communauté européenne, les contestations relatives aux droits reconnus par l'article L. 341-5 en matière de rémunération, de durée du travail et de conditions de travail peuvent être portées devant le conseil de prud'hommes dans le ressort duquel la prestation s'effectue ou a été effectuée.
Si la prestation s'effectue ou a été effectuée en des lieux situés dans le ressort de

plusieurs conseils de prud'hommes, ces contestations peuvent être portées devant l'une quelconque de ces juridictions.

**Article R517-2**

*(Décret n° 74-783 du 12 septembre 1974 (Décret 74-783 1974-09-12 JORF 15 septembre date d'entrée en vigueur 1ER octobre))*

*(Décret n° 74-783 du 12 septembre 1974 (Décret 74-783 1974-09-12 JORF 15 septembre date d'entrée en vigueur 1ER octobre))*

*(Décret n° 79-1022 du 23 novembre 1979 (Décret 79-1022 1979-11-23 JORF 2 décembre))*

*(inséré par Décret n° 79-1022 du 23 novembre 1979 (Décret 79-1022 1979-11-23 JORF 2 décembre))*

Les affaires sont réparties entre les sections du conseil de prud'hommes en fonction des règles prévues à l'article L. 512-2 et régissant l'appartenance des salariés aux différentes sections.

En cas de difficulté ou de contestation relatives à la connaissance d'une affaire par une section, et quel que soit le stade de la procédure auquel survient cette difficulté ou cette contestation, le dossier est transmis au président du conseil de prud'hommes , qui, après avis du vice-président, renvoie l'affaire à la section qu'il désigne par une ordonnance non susceptible de recours.

  

029078

SOC.                          **PRUD'HOMMES**                          C.F

## COUR DE CASSATION

Audience publique du **21 juin 2005**

Rejet

M. SARGOS, président

Arrêt n° 1503 FS-P+B

Pourvoi n° A 02-45.479

## REPUBLIQUE FRANCAISE

### AU NOM DU PEUPLE FRANCAIS

LA COUR DE CASSATION, CHAMBRE SOCIALE, a rendu l'arrêt suivant :

Sur le pourvoi formé par la société Unilog, société anonyme, dont le siège est 97/99, boulevard Pereire, 75017 Paris,

en cassation d'un arrêt rendu le 27 juin 2002 par la cour d'appel de Paris (18e chambre c), au profit de Mme Caroline Quelquejay, demeurant

défenderesse à la cassation ;

Vu la communication faite au Procureur général ;

LA COUR, composée conformément à l'article L. 131-6-1 du Code de l'organisation judiciaire, en l'audience publique du 24 mai 2005, où étaient présents : M. Sargos, président, Mme Divialle, conseiller référendaire

2                                                                1503

rapporteur, MM. Bouret, Bailly, Chauviré, Gillet, Mmes Morin, Perony, conseillers, Mmes Lebée, Andrich, MM. Funck-Brentano, Leblanc, Mmes Slove, Bobin-Bertrand, Manes-Roussel, Farthouat-Danon, conseillers référendaires, M. Collomp, avocat général, Mme Ferré, greffier de chambre ;

Sur le rapport de Mme Divialle, conseiller référendaire, les observations de la SCP Lesourd, avocat de la société Unilog, de Me Bouthors, avocat de Mme Quelquejay, les conclusions de M. Collomp, avocat général, et après en avoir délibéré conformément à la loi ;

Sur le moyen unique :

Attendu que Mme Quelquejay, salariée de la société Unilog, s'est vu consentir le 26 juillet 1996 les options de souscription d'actions dite «stocks options» portant sur 36, puis 360 actions de la société, pour une durée de cinq ans, ladite option pouvant être levée entre le 26 juillet 1998 et le 25 juillet 2001 inclus ; que la salariée ayant fait une déclaration de levée de ses 360 actions le 29 juin 2001, s'est vu opposer un refus, au motif qu'étant en congé parental depuis le 18 août 1997 elle ne pouvait y prétendre, son contrat de travail étant suspendu ; que la salariée a saisi en référé le conseil de prud'hommes lequel par ordonnance du 22 octobre 2001 s'est déclaré incompétent au profit du tribunal d'instance ; que la salariée a interjeté appel de cette décision ;

Attendu que pour des motifs pris de la violation des articles L. 135-5, L. 135-6, L. 511-1 et R. 442-6 du Code du travail, ensemble les dispositions de la loi du 31 décembre 1970, la société fait grief à l'arrêt (Paris, 27 juin 2002) d'avoir dit que le conseil de prud'hommes était compétent pour connaître du litige ;

Mais attendu que l'octroi par l'employeur à un salarié d'une option donnant droit à une souscription d'action constitue un accessoire du contrat de travail dont la connaissance relève de la compétence du conseil de prud'hommes ; que le moyen n'est pas fondé ;

PAR CES MOTIFS :

REJETTE le pourvoi ;

Condamne la société Unilog aux dépens ;

Ainsi fait et jugé par la Cour de Cassation, Chambre sociale, et prononcé par le président en son audience publique du vingt et un juin deux mille cinq.

RJS 2005

**1014.** participation financière - options de souscription ou d'achat d'actions - contentieux - juridiction compétente

L'octroi par l'employeur à un salarié d'une option donnant droit à une souscription d'action constitue un accessoire du contrat de travail dont la connaissance relève de la compétence du conseil de prud'hommes.

**Cass. soc. 21 juin 2005 n° 1503 FS-PB, Sté Unilog c/ Quelquejay.**

M. Sargos, Prés. - M^me Divialle, Rapp. - M. Collomp, Av. gén. - SCP Lesourd, M^e Bouthors, Av.

Attendu que M^me Quelquejay, salariée de la société Unilog, s'est vue consentir le 26 juillet 1996 les options de souscription d'actions dite « stock-options » portant sur 36, puis 360 actions de la société, pour une durée de cinq ans, ladite option pouvant être levée entre le 26 juillet 1998 et le 25 juillet 2001 inclus ; que la salariée ayant fait une déclaration de levée de ses 360 actions le 29 juin 2001, s'est vu opposer un refus, au motif qu'étant en congé parental depuis le 18 août 1997, elle ne pouvait y prétendre, son contrat de travail étant suspendu ; que la salariée a saisi en référé le conseil de prud'hommes lequel par ordonnance du 22 octobre 2001 s'est déclaré incompétent au profit du tribunal d'instance ; que la salariée a interjeté appel de cette décision ;
Attendu que pour des motifs pris de la violation des articles L 135-5, L 135-6, L 511-1 et R 442-6 du Code du travail, ensemble les dispositions de la loi du 31 décembre 1970, la société fait grief à l'arrêt (Paris, 27 juin 2002) d'avoir dit que le conseil de prud'hommes était compétent pour connaître du litige ;
Mais attendu que l'octroi par l'employeur à un salarié d'une option donnant droit à une souscription d'actions constitue un accessoire du contrat de travail dont la connaissance relève de la compétence du conseil de prud'hommes ; que le moyen n'est pas fondé ;
Par ces motifs : Rejette le pourvoi.

**Observations**
Pour la première fois à notre connaissance, la Cour de cassation confirme la compétence du conseil de prud'hommes en cas de conflit entre un salarié et son employeur relatif à des options de souscription d'action consenties par l'employeur : il s'agit bien d'un différend s'élevant entre employeur et salarié « à l'occasion du contrat de travail », selon les termes de l'article L 511-1 du Code du travail définissant la compétence de cette juridiction.
La solution concerne au cas particulier un litige portant sur le droit de lever les options pour un salarié dont le contrat de travail est suspendu. Mais il découle de la formulation adoptée dans le dernier attendu qu'elle est plus générale : tous les litiges relatifs à l'octroi d'options sur actions intervenant entre un salarié et son employeur doivent être portés devant le conseil de prud'hommes.
En revanche, il en irait autrement si les parties au litige étaient la société ayant consenti les options et un mandataire social n'ayant pas la qualité de salarié.

RJS 2005
(c) 2007 Editions Francis Lefebvre

Loïc Cadiet
Agrégé des Facultés de droit
Professeur à l'Université de Paris I
(Panthéon-Sorbonne)

# DROIT JUDICIAIRE PRIVÉ

*deuxième édition*



Libraire de la Cour de cassation
27, place Dauphine, 75001 Paris

*internationaux*, Bâle, 1980. — P. MAYER, *Les clauses relatives à la compétence internationale insérées dans les contrats de travail : Mélanges Dominique Holleaux*, Litec, 1990, 269 et les références citées *supra*, n. 545.

**676. — Liberté plus grande.** — Les parties à un contrat international disposent d'une plus grande liberté dans le choix de la juridiction appelée à connaître de leurs éventuels différends que les parties à un contrat interne. Le constat n'est pas niable. Cela tient au fait que s'il existe, à l'intérieur d'un pays, des règles organisant la compétence des juridictions et permettant d'en assurer le respect, ces règles n'existent normalement pas à l'échelle internationale, à défaut d'autorité politique et juridictionnelle pour les imposer. La liberté des parties y devient donc la règle. Aussi, la validité des accords de compétence internationale est un principe régulièrement rappelé par les juridictions françaises qui prennent soin, notamment, de souligner que l'article 48, règle de compétence interne, n'est pas applicable aux contrats internationaux (107), alors même que la convention des parties aurait pour effet de modifier, par voie de conséquence, la compétence interne (108). Il ne faudrait pas croire pour autant que l'accord de compétence internationale relève discrétionnairement de la liberté contractuelle pour n'obéir à aucune règle étatique. Le contrat sans loi n'existe pas vraiment et il arrive un moment où les parties à un contrat international placent leur relation sous l'empire d'un ordre juridique étatique, en la mettant éventuellement dans la main d'un organe juridictionnel étatique dont les règles, même assouplies pour tenir compte de l'internationalité du rapport de droit, seront applicables. Des règles existent donc bien qui n'intéressent pas seulement la validité (A) mais aussi l'efficacité (B) des accords de compétence internationale.

## A. — VALIDITÉ DES ACCORDS DE COMPÉTENCE INTERNATIONALE

**677. — Principe général du droit international privé.** — Si la validité des accords de compétence internationale est un principe général du droit international privé, ce principe ne s'apprécie cependant pas de la même manière en l'absence (1°) ou en présence (2°) d'un traité international.

### 1° En droit commun

**678. — Conditions de fond.** — En l'absence de convention judiciaire internationale, c'est le droit commun dit des conflits de juridictions qui s'applique. Or, dans ce système, la validité des accords de compétence internationale est subordonnée à deux sortes de conditions (109). Il existe, d'abord, des conditions de fond. Outre que le contrat doit être international et

---

(107) Cass. civ. 1re, 17 déc. 1985 : *Rev. crit. DIP* 1986, 537, note GAUDEMET-TALLON ; *D.* 1986, IR 265, obs. AUDIT. — D'où peu importe la qualité de non-commerçant de l'une des parties : Cass. civ. 1re, 11 fév. 1997 : *JCP* 97, IV, 747. — V., en droit du travail, Cass. civ. 1re, 16 juin 1987 : *D.* 1987, IR 161.

(108) Cass. soc., 1er mars 1989 : *JCP* 89, IV, 161.

(109) Sur la nécessité d'apprécier la validité de la clause, V. Cass. civ. 1re, 9 oct. 1990 : *Rev. crit. DIP* 1991, 135, obs. GAUDEMET-TALLON et sur la détermination de la loi applicable à la validité d'une clause attributive de juridiction en matière internationale, V. Cass. civ. 1re, 3 déc.

© Éditions Litec

exempt de fraude (110), il faut que la loi de l'ordre juridictionnel choisi accepte la prorogation ainsi réalisée. En effet, l'action en justice est normalement régie par la loi du pays dans lequel elle est exercée ; or, certaines législations écartent, totalement ou partiellement, les prorogations conventionnelles de compétence. Ainsi, le droit français consacre quelques compétences territoriales exclusives, donc impératives, auxquelles il n'est pas possible de déroger, pas plus en matière internationale qu'en droit interne : c'est notamment le cas à propos des contrats d'assurance terrestre ou de contrat de travail (111). En conséquence, toute clause qui attribuerait compétence à un autre ordre juridictionnel que l'ordre juridictionnel français serait nulle, de la même façon que la clause de compétence matérielle interne donnant compétence à une autre juridiction que la juridiction exclusivement compétente (112), ce qui serait de nature à faire obstacle à l'efficacité ultérieurement recherchée, en France, du jugement étranger prononcé en vertu de la clause attributive de compétence (113).

**679.** — **Conditions de forme.** — La validité des accords de compétence internationale est également subordonnée au respect de conditions de forme. Sur ce point, la jurisprudence tend à étendre aux clauses de compétence internationale les exigences de l'article 48, non pas en tant que telles, bien sûr, mais en tant qu'elles expriment un principe général de loyauté contractuelle (114). En conséquence, il faut que la clause ait été précisément libellée (115) et spécifiée de façon très apparente dans l'engagement de la partie à qui elle est opposée, ce qui permet de présumer qu'elle a été valablement consentie (116). Cependant, si le principe est emprunté au droit interne, son application ne saurait être aussi rigoureusement conçue en matière internatio-

---

1991 : *D.* 1992, IR 24. — Il est opportun de distinguer *la question de la licéité de la clause* (la clause est-elle valable dans son principe même ?) *et la question de la validité de la clause* (à la supposer licite, est-elle conforme aux conditions de validité exigées par la loi qui lui est applicable ?). La licéité doit en effet s'apprécier par rapport à la loi du juge qui en est saisi, le droit français pour ce qui nous intéresse, car seule la *lex fori* peut décider si la compétence judiciaire du *for* peut être ainsi fondée ou, au contraire, évincée. Quant à sa validité, en revanche, la clause attributive de compétence doit être appréciée au regard de la loi qui lui est applicable, *lex contractus*, et qui n'est pas forcément la loi française : V. par ex. Cass. civ. 1ᵉ, 3 déc. 1991 1992, IV, 465 et, en ce sens, MAYER, n. 301-302 ainsi que les développements approfondis de F. LEBORGNE, *L'action en responsabilité dans les groupes de contrats. Étude de droit interne et de droit international privé*, thèse Rennes I, 1995. — Est notable, en doctrine, une tendance à promouvoir, à l'instar de la clause compromissoire (V. *infra*, n. 2079), l'autonomie de la clause attributive de compétence, ce qui la ferait survivre à la nullité infestant le contrat : V. C. BLANCHIN, *L'autonomie de la clause compromissoire : un modèle pour la clause attributive de juridiction ?*, LGDJ, 1995. — Rapp. *infra*, n. 680 et s.
    (110) V. Paris, 10 oct. 1990 : *Rev. crit. DIP* 1991, 605, note GAUDEMET-TALLON.
    (111) V. Paris, 14 nov. 1990 : *Rev. crit. DIP* 1991, 734, obs. GAUDEMET-TALLON. — V., en revanche, pour le contrat de travail, les solutions plus permissives de la jurisprudence et, par ex., Cass. soc., 22 avril 1992 : *D.* 1992, IR 169. — Versailles, 8 avril 1993 : *D.* 1993, IR 154. — V. MAYER, n. 304.
    (112) V. *supra*, n. 661 et s.
    (113) V. *infra*, n. 1502 et s.
    (114) V. MAYER, n. 303.
    (115) Paris, 30 janv. 1991 : *D.* 1993, IR 380 (pas en l'espèce).
    (116) Cass. com., 30 janv. 1990 : *JCP* 90, IV, 120. — D'où l'inopposabilité, même en cas de relations d'affaires suivies, de la clause contenue dans les conditions générales du cocontractant dès lors que le contrat litigieux n'y fait référence, directement ou indirectement : Cass. civ. 1ᵉ, 30 juin 1992 : *D.* 1994, 169, note GUEZ.

© Éditions Litec

# Droit
# international
# privé

*9ᵉ édition*

*2007*

**Yvon Loussouarn**
Professeur émérite de l'Université Panthéon-Assas (Paris II)
Doyen honoraire de la faculté de droit
et des sciences économiques de Rennes

**Pierre Bourel**
Professeur émérite de l'Université Panthéon-Assas (Paris II)
Ancien professeur aux facultés de droit de Tunis et de Dakar

**Pascal de Vareilles-Sommières**
Professeur à l'Université Panthéon-Sorbonne (Paris I)



elles dissipent l'incertitude quant à la compétence [1] et du même coup quant au droit applicable, celui-ci étant déterminé par la règle de conflit du juge saisi, qui, en raison du particularisme dominant, varie souvent d'un État à l'autre. Les clauses attributives de juridiction ne doivent donc pas connaître d'autres limites que celles dans lesquelles elles sont traditionnellement enserrées et que la Cour de cassation a précisément rappelées dans son arrêt de 1985, à savoir qu'elles ne sont admises que si le litige présente un caractère international, et à condition qu'elles ne fassent pas échec à la compétence territoriale impérative d'une juridiction française [2].

**454-2 *Conditions de validité*** ◇ À supposer la licéité de la prorogation conventionnelle acquise dans un cas donné, il reste à vérifier si la stipulation par laquelle les parties y ont consenti remplit toutes les conditions requises pour sa validité. La clause présente deux aspects : un aspect procédural par son objet et un aspect contractuel par sa source. S'agissant d'une clause de nature contractuelle, il appartient normalement, d'une part, à la loi d'autonomie, c'est-à-dire à la loi choisie par les parties dans leur contrat principal, d'en déterminer les conditions de validité au fond [3], notamment quant aux vices du consentement qui peuvent l'affecter, et, d'autre part, à la loi désignée par la règle de conflit en matière de forme des actes de définir ses conditions de forme [4]. À ce dernier égard, la clause doit faire l'objet d'une stipulation « très apparente », conformément à l'article 48 du nouveau Code de procédure civile, lorsque la loi française est la *lex loci actus*. S'agissant d'une clause ayant pour objet la compétence juridiciaire, la loi du for s'applique à ses aspects procéduraux. La loi française exige ainsi que, lorsque la clause se contente d'énoncer une désignation globale des juridictions d'un État, elle soit formulée de telle sorte qu'elle permette de déterminer le

---

1. Batiffol et Lagarde, 7ᵉ éd., n° 675.

2. Les cas de compétence territoriale impérative ne sont malheureusement pas limitativement énumérés. Les règles de compétence territoriale internationale en matière de statut personnel, lorsqu'elles sont fondées sur un critère territorial (par ex., art. 1070 NCPC en matière familiale), sont normalement impératives. Sur les litiges de consommation, v. E. Pataut, « Clauses attributives de juridiction et clauses abusives », in *Études de droit de la consommation, Liber amicorum Jean Calais-Auloy*, Dalloz 2004, 807 ; sur les litiges en matière de contrat de travail, v. Cass. ch. mixte, 28 juin 1974, *Rev. crit. DIP* 1975.110, note P. Lagarde, *JDI* 1975.82, note Holleaux, *JCP* 1974.II.17881, note G. Lyon-Caen, Cass. soc., 7 mai 1987, *D.* 1988. Somm. 341. V. cependant, Cass. soc. 8 juill. 1985, *Rev. crit. DIP* 1986.113, note Gaudemet-Tallon et Cass. soc. 21 janv. 2004, *Rev. crit. DIP* 2004.644, note Jault-Seseke, Cass. civ., 16 juin 1987, *D.* 1988. Somm. 341, qui adoptent une position plus libérale. Sur la question dans son ensemble cf. Audit, « Les conflits de juridictions en matière de droit du travail », *JCP* 1986, éd. E, suppl. n° 4, p. 33, P. Mayer, « Les clauses relatives à la compétence internationale, insérées dans les contrats de travail », *Mélanges Holleaux*, p. 263 et s.

3. *Contra* cependant, H. Gaudemet-Tallon, note *Rev. crit. DIP* 1991, p. 610 et s.

4. Cass. civ., 3 déc. 1991 précité.

# CHAPTER II : Of the Essential Requisites for the Validity of Agr

Home > CIVIL CODE
> BOOK III - OF THE VARIOUS WAYS HOW OWNERSHIP IS ACQUIRED
> TITLE III - OF CONTRACTS AND OF CONVENTIONAL OBLIGATIONS IN GENERAL
> CHAPTER II - Of the Essential Requisites for the Validity of Agreements

▶ SECTION I : Of Consent (Art. 1109 to 1122)

▶ SECTION II : Of the Capacity of Contracting Parties (Art. 1123 to 1125-1)

▶ SECTION III : Of the Object and Subject Matter Of Contracts (Art. 1126 to 1130)

▶ SECTION IV : Of Cause (Art. 1131 to 1133)

▶ **Art. 1108**

Four requisites are essential for the validity of an agreement:
The consent of the party who binds himself;
His capacity to contract;
A definite object which forms the subject-matter of the undertaking;
A lawful cause in the obligation.

▶ **Art. 1108-1**

(Act no 2004-575 of 21 June 2004).- Where a writing is required for the validity of a legal transaction, it may be established
stored in electronic form in the way provided for in Articles 1316-1 and 1316-4 and, where an authentic instrument is required,
Article 1317, paragraph 2.

Where a mention written in the own hand of the person who binds himself is required, the latter may appose it in electronic
where the conditions in which it is apposed are likely to vouch that it can only be apposed by the person himself.

▶ **Art. 1108-2**

(Act no 2004-575 of 21 June 2004).- Exception is made to the provisions of Article 1108-1 in regard to:
1° Instruments under private signature relating to family law and the law of succession;
2° Instruments under private signature relating to suretyship or property charge, of commercial or non-commercial charact
except where they are drawn up by a person for the needs of his occupation.

CIV. 1                    001960                    CH.B

COUR DE CASSATION

Audience publique du 30 juin 1992

                                              Rejet

M. MASSIP, conseiller doyen
faisant fonctions de président

                                              Arrêt n° 1004 P

Pourvoi n° 90-21.491/U


R E P U B L I Q U E    F R A N C A I S E


AU NOM DU PEUPLE FRANCAIS


          LA COUR DE CASSATION, PREMIERE CHAMBRE
CIVILE, a rendu l'arrêt suivant :

          Sur le pourvoi formé par la société anonyme
Verdol désormais dénommée ICBT-Lyon, société anonyme,
dont le siège est 2/12, avenue Barthélémy Thimonnier, à
Caluire (Rhône),

en cassation d'un arrêt rendu le 28 septembre 1990 par
la cour d'appel de Lyon (3ème chambre), au profit de la
Société general industrial and engineering supplies,
Société de droit égyptien, dont le siège est 40,
Shgaria Safia Zaghloul street, à Alexandria (République
arabe d'Egypte),

défenderesse à la cassation ;

          La demanderesse invoque, à l'appui de son
pourvoi, le moyen unique de cassation annexé au présent
arrêt ;

          LA COUR, en l'audience publique du
25 mai 1992, où étaient présents : M. Massip,
conseiller doyen faisant fonctions de président,
M. Lemontey, conseiller rapporteur, MM. Grégoire,
Bernard de Saint-Affrique, Gélineau-Larrivet, Forget,
Mme Gié, conseillers, M. Savatier, conseiller
référendaire, M. Gaunet, avocat général, Mlle Ydrac,
greffier de chambre ;

- 2 -                    1004

Sur le rapport de M. le conseiller Lemontey, les observations de la SCP Lyon-Caen, Fabiani et Thiriez, avocat de la société Verdol actuellement dénommée ICBT-Lyon, de Me Choucroy, avocat de la Société general industrial and engineering supplies, les conclusions de M. Gaunet, avocat général, et après en avoir délibéré conformément à la loi ;

Attendu que par contrat ayant pris effet le 1er novembre 1982, la société française Verdol (devenue la société ICBT-Lyon) a confié à la société égyptienne GIES "la représentation pour l'Egypte du matériel Jacquard" ; que le contrat, régi par la loi française, contenait une clause attribuant juridiction au tribunal de commerce de Lyon ; qu'en vue de son utilisation par une filiale commune dont la création était envisagée, une machine Lisomat a été commandée par la société GIES ; que la commande a été confirmée, le 25 avril 1983, par la société Verdol ; que le projet d'association ayant été abandonné, la société Verdol, plutôt que de se faire réexpédier la machine, a choisi de la faire vendre à M. Karoussa selon la proposition qui lui en avait été faite par la société GIES, le 4 décembre 1983 ; que la société Verdol n'ayant pas reçu la partie du prix payable immédiatement a, le 26 septembre 1986, assigné devant le tribunal de commerce de Lyon la société GIES en paiement, outre de dommages-intérêts, de la somme de 270 000 US $ représentant le prix de vente qu'elle avait fixé ; que l'arrêt attaqué (Lyon, 28 septembre 1990) a déclaré ce tribunal incompétent pour connaître du litige ;

<u>Sur le premier moyen, pris en ses cinq premières branches, telles qu'elles sont énoncées au mémoire en demande et annexées au présent arrêt :</u>

Attendu que sous couvert de griefs non fondés de dénaturation, de manque de base légale et non-réponse à conclusions, le moyen ne tend, dans ses cinq premières branches, qu'à remettre en cause l'appréciation souveraine de l'intention des parties et

- 3 -                    1004

des éléments de preuve par laquelle la cour d'appel a jugé que la vente de la machine à M. Karoussa ne pouvait être considérée comme ayant été négociée en exécution du contrat de représentation, de sorte que le litige n'entrait pas dans le champ d'application de la clause de juridiction qui était incluse dans ce contrat ; que les griefs ne peuvent donc être accueillis ;

<u>Et sur la sixième branche du même moyen</u> :

Attendu que le société Verdol soutient aussi qu'en refusant d'appliquer la même clause, stipulée dans les documents commerciaux de la société avec laquelle la société GIES entretenait des relations suivies et qui lui était, dès lors, opposable car seule importe, dans l'ordre international, la conformité de cette clause aux usages internationaux, la cour d'appel aurait violé les articles 1134 du Code civil, 48 du nouveau Code de procédure civile et 109 du Code du commerce ;

Mais attendu que la connaissance éventuelle par l'une des parties, à l'occasion d'opérations antérieures, des conditions générales de l'autre partie contenant une clause de juridiction ou la connaissance de l'existence d'une telle clause dans des documents étrangers à l'opération litigieuse ne suffit pas, même au cas de relations d'affaires suivies, à lui rendre opposable cette clause si le contrat n'y fait aucune référence, directement ou indirectement ; que c'est donc à juste titre que la cour d'appel a encore écarté la clause de juridiction figurant de manière générale sur les documents commerciaux de la société Verdol ; qu'ainsi le grief n'est pas fondé ;

<u>Sur le second moyen, pris en ses quatre branches</u> :

Attendu que la société Verdol reproche à l'arrêt attaqué, qui a jugé qu'elle avait renoncé à se prévaloir tant de la clause de juridiction que du privilège instauré par l'article 14 du Code civil pour avoir saisi également le 17 novembre 1986, le tribunal d'Alexandrie, de n'avoir pas tiré les conséquences légales de sa constatation suivant laquelle la saisine

- 4 -                    1004

de la juridiction égyptienne était postérieure à celle du tribunal de Lyon et de n'avoir pas relevé l'intention réelle de la société Verdol de renoncer ; qu'elle lui reproche, aussi, de ne pas avoir répondu à ses conclusions par lesquelles elle soutenait, d'une part, qu'elle avait saisi le juge égyptien dans le souci d'obtenir une décision plus facile à exécuter et, d'autre part, que les deux demandes différaient par leur objet ;

Mais attendu que l'introduction d'une action à l'étranger, même postérieure à la saisine du juge français, fait présumer la renonciation à la clause ou au privilège de juridiction française à moins qu'il soit démontré que le demandeur n'a pas agi sciemment et librement ; que la cour d'appel a relevé que la société Verdol avait assigné, le 17 novembre 1986, la société GIES et M. Karoussa devant le tribunal d'Alexandrie en paiement de la somme de 270 000 US $ ou, à défaut, en résolution de la vente ; que la cour d'appel, qui pour en déduire que la preuve de la renonciation n'était pas rapportée, a retenu que la société Verdol, en saisissant ainsi la juridiction égyptienne du même litige, n'avait pas agi en réplique à l'action intentée antérieurement par M. Karoussa et qui ne tendait qu'à une expertise, a répondu aux conclusions invoquées dans la mesure où celles-ci exprimaient un véritable moyen et non une simple allégation et a légalement justifié sa décision ;

PAR CES MOTIFS :

REJETTE le pourvoi ;

Condamne la société Verdol dénommée société ICBT-Lyon, envers la société GIES, aux dépens et aux frais d'exécution du présent arrêt ;

- 5 -                          1004

Ainsi fait et jugé par la Cour de Cassation, Première chambre civile, et prononcé par M. le président en son audience publique du trente juin mil neuf cent quatre vingt douze.

Case 1:07-cv-05195-PKL Document 21 Filed 01/08/2008 Page 29 of 36

et Cerutti, Avocat aux Conseils, pour
la société Verdol désormais dénommée
ICBT-Lyon.

~7. MAI 1991

**POURVOI N° U. 90/21.491**

MOYENS ANNEXES à l'arrêt 1004 CIV.1

1360

### PREMIER MOYEN DE CASSATION

"Le moyen fait grief à l'arrêt infirmatif atta-
qué d'avoir déclaré inapplicables en l'espèce les
clauses attributives de juridiction stipulées tant dans
le contrat de représentation commerciale conclu entre la
Société égyptienne GIES et la Société française VERDOL,
que celle figurant sur tous les documents commerciaux de
cette dernière et, en conséquence, d'avoir déclaré
incompétent le Tribunal de Commerce de LYON pour
connaître du litige, renvoyant dès lors la Société
VERDOL à mieux se pourvoir,

1°) AUX MOTIFS QUE " la machine litigieuse a
" été expédiée à la Société GIES non en exécution de ce
" contrat de représentation, c'est-à-dire en vue de la
" vente à un tiers, mais dans la perspective de l'uti-
" lisation de cette machine par une société que les
" parties avaient envisagé de créer ; que ce projet
" ayant été abandonné par les parties, la Société
" VERDOL se trouvait, ainsi qu'il résulte d'un télex
" expédié le 16 novembre 1983 par un de ses agents,
" devant l'alternative de réexpédier la machine en
" France ou de la vendre sur place ; que, par télex
" du 4 décembre 1983, la Société GIES lui a soumis
" trois solutions dont les deux premières étaient des
" propositions de vente et la troisième la réexpédi-
" tion ; que la Société VERDOL a opté pour la première
" solution, consistant à vendre la machine à Monsieur
" KAROUSSA ; qu'en raison de ces circonstances parti-
" culières, la vente conclue avec ce dernier ne peut
" être considérée comme ayant été négociée par la
" Société GIES en exécution du contrat de représen-
" tation, ce que confirme un télex du 29 décembre
" 1983, par lequel la Société VERDOL se déclarait
" disposée à verser à la Société GIES une commission
" complémentaire de 10 % pour ce " spécial business ",
" peu important que cette affaire ait été traitée dans
" certains télex en même temps que d'autres opérations
" entrant dans le cadre du contrat " ;

. . ./. . .

- 2 -

ALORS, D'UNE PART, QU'en refusant de faire application de la clause claire et précise prorogeant la compétence des juridictions françaises stipulée dans le contrat général de représentation liant les parties, la Cour d'appel, qui ne pouvait l'écarter au prétexte de rechercher la véritable intention des parties, a dénaturé sa portée et, partant, violé l'article 1134 du Code civil par refus d'application ;

ALORS, D'AUTRE PART, QU'en se bornant à énoncer qu'il résultait des circonstances de la cause que le contrat de vente de la machine LISOMAT n'avait pas été conclu en exécution du contrat général de représentation, sans préciser dans quel cadre juridique autonome et selon quelles modalités serait intervenu un accord distinct, la Cour d'appel a procédé par voie de simple affirmation et, partant, a privé sa décision de base légale au regard de l'article 1134 du Code civil ;

ALORS, D'UNE TROISIEME PART, QU'en déduisant de la circonstance que la machine litigieuse avait été expédiée à la Société GIES dans la perspective de son utilisation par une société que les parties entendaient créer que la vente ultérieure de celle-ci à un tiers par cette dernière, à la suite de l'abandon du projet, ne pouvait procéder du contrat général de représentation, la Cour d'appel a statué par un motif inopérant et, partant, a derechef privé sa décision de base légale au regard de l'article 1134 du Code civil ;

ALORS, D'UNE QUATRIEME PART, QU'en retenant l'existence d'un contrat de vente distinct du contrat de représentation commerciale tout en constatant que la Société VERDOL s'était engagée à verser à la Société GIES une commission " complémentaire " de 10 % pour ce " special business ", la Cour d'appel n'a pas tiré de ses propres constatations les conséquences légales qui s'en évinçaient nécessairement ;

ALORS, D'UNE CINQUIEME PART, QU'en ne répon- dant pas aux chefs péremptoires des conclusions de la Société VERDOL, qui faisait valoir, pour s'opposer à la

.../...

- 3 -

qualification d'opération commerciale autonome de la commercialisation par la Société GIES de la machine LISOMAT d'un côté, qu'ayant confié à celle-ci un mandat général exclusif de représentation sur l'ensemble du territoire égyptien de la totalité des produits JACQUARD, il lui était impossible de faire commercialiser le matériel LISOMAT, appartenant à cette gamme, autrement que dans le cadre de ce contrat et, d'un autre côté, que la Société GIES s'étant dans un premier temps conformée aux prescriptions de ce contrat, elle devait être réputée en avoir accepté les stipulations, la Cour d'appel n'a pas satisfait aux exigences de l'article 455 du nouveau Code de procédure civile ;

     2°) ET AUX MOTIFS QUE " vainement la Société
" VERDOL fait-elle état de ce que la même clause
" figure sur tous ses documents commerciaux, de sorte
" que la Société GIES ne pourrait prétendre avoir
" ignoré qu'elle faisait partie de ses conditions géné-
" rales de vente, dès lors que, quelle que soit la
" connaissance que cette dernière ait pu avoir des
" conditions générales de vente de la Société VERDOL
" à l'occasion d'opérations antérieures, il n'est pas
" démontré ni même allégué que cette clause ait été
" spécifiée dans son engagement, ni même qu'un document
" la contenant lui ait été adressé à l'occasion de la
" vente litigieuse " ;

     ALORS, ENFIN, QU'en refusant de faire appli-
cation de la clause litigieuse prorogeant la compétence des juridictions françaises stipulée dans les documents commerciaux de la Société VERDOL, avec laquelle la Société GIES entretenait des relations suivies, qui lui était dès lors opposable, les exigences de l'article 48 du nouveau Code de procédure civile n'étant pas appli-
cables dans l'ordre international, où seule importe la conformité de cette clause aux usages internationaux, la Cour d'appel a violé par refus d'application les articles 1134 du Code civil et 109 du Code de commerce et, par fausse application, l'article 48 du nouveau Code de procédure civile.

S.C.P. d'Avocats au Conseil d'État
et à la Cour de Cassation
Arnaud LYON-CAEN
Françoise FABIANI
Frédéric THIRIEZ
62ᵇⁱˢ. rue Charles Laffitte
92200 NEUILLY-sur-SEINE
Tél. : 46 24 95 19

POURVOI N° U. 90/21.491

## SECOND MOYEN DE CASSATION

Le moyen fait grief à l'arrêt infirmatif attaqué d'avoir estimé qu'en saisissant la juridiction égyptienne après avoir assigné la Société GIES devant le Tribunal de Commerce de LYON, la Société VERDOL a tacitement renoncé à se prévaloir tant de la prorogation conventionnelle de compétence que du privilège de juridiction institué par l'article 14 du Code civil et, en conséquence, d'avoir déclaré incompétent le Tribunal de Commerce de LYON, renvoyant dès lors la Société VERDOL à mieux se pourvoir,

AUX MOTIFS QU' " après avoir, le 26 septembre 1986, assigné la Société GIES devant le Tribunal de Commerce de LYON aux fins ci-dessus indiquées, la Société VERDOL a, par acte du 17 novembre 1986, assigné la Société GIES et M. KAROUSSA devant le Tribunal de première instance d'ALEXANDRIE en paiement de la somme de 270.000 U.S. $ ou, à défaut de paiement, en résolution de la vente ; qu'en saisissant ainsi la juridiction égyptienne du même litige alors que, contrairement à ce qu'elle soutient, il n'apparaît pas qu'elle ait agi en réplique à l'action intentée par M. KAROUSSA, laquelle ne tendait qu'à faire ordonner une expertise, elle a renoncé à se prévaloir de la clause attributive de compétence stipulée à son avantage, à supposer celle-ci applicable " ;

ALORS, D'UNE PART, QU'en estimant que la Société VERDOL avait tacitement renoncé à se prévaloir tant de la prorogation conventionnelle de compétence que du privilège de juridiction de l'article 14 du Code civil, tout en constatant que la saisine par elle de la juridiction égyptienne était postérieure à celle de la juridiction française, la Cour d'appel n'a pas tiré de ses propres constatations les conséquences légales qui s'en évinçaient nécessairement ;

.../...

ALORS, D'AUTRE PART, QU'en se bornant à déduire la renonciation par la Société VERDOL à la prorogation conventionnelle de compétence et au privilège de juridiction de l'article 14 du Code civil de la seule saisine de la juridiction égyptienne, postérieure à celle de la juridiction française, sans relever dans les circonstances de la cause une intention réelle de la Société VERDOL de renoncer au bénéfice de ceux-ci, la Cour d'appel n'a pas conféré une base légale suffisante à sa décision ;

ALORS, ENCORE, QU'en ne répondant pas au chef péremptoire des conclusions de la Société VERDOL, qui faisait valoir que la saisine de la juridiction égyptienne était motivée par le souci d'obtenir une décision plus facile à exécuter qu'elle ne l'aurait été si elle avait émané d'une juridiction française, duquel il s'évinçait nécessairement que la Société VERDOL n'avait pas entendu renoncer à la compétence des juridictions françaises, la Cour d'appel n'a pas safisfait aux exigences de l'article 455 du nouveau Code de procédure civile ;

ALORS, ENFIN, QU'en ne répondant pas au chef péremptoire des conclusions de la Société VERDOL, qui distinguait l'action intentée contre la Société GIES devant le Tribunal de Commerce de LYON de l'action introduite en Egypte, dirigée principalement à l'encontre de M. KAROUSSA, acheteur du matériel LISOMAT, dans laquelle elle avait été contrainte d'appeler en la cause la Société GIES, duquel il s'évinçait nécessairement que les deux demandes différaient par leur objet, la Cour d'appel n'a pas satisfait aux exigences de l'article 455 du nouveau Code de procédure civile.»

*10*

SOC.

**PRUD'HOMMES** 039138      CM

## COUR DE CASSATION

Audience publique du **16 mai 2007**

Rejet

M. CHAUVIRÉ, conseiller le plus ancien, faisant fonction
de président

Arrêt n° 1036 F-D

Pourvoi n° X 05-45.281

# R E P U B L I Q U E   F R A N C A I S E

## AU NOM DU PEUPLE FRANCAIS

LA COUR DE CASSATION, CHAMBRE SOCIALE, a rendu
l'arrêt suivant :

Statuant sur le pourvoi formé par M. Maurice Soustiel, domicilié

contre l'arrêt rendu le 15 septembre 2005 par la cour d'appel de Versailles
(17e chambre), dans le litige l'opposant à la société Intuitive Surgical, société
par actions simplifiée, venant aux droits de la société à responsabilité limitée
Intuitive Surgical, dont le siège est 5 place Royale, 78100
Saint-Germain-en-Laye,

défenderesse à la cassation ;

Vu la communication faite au procureur général ;

LA COUR, en l'audience publique du 28 mars 2007, où étaient présents : M. Chauviré, conseiller le plus ancien, faisant fonction de président, Mme Slove, conseiller référendaire rapporteur, MM. Gillet, Linden, conseillers, M. Allix, avocat général, Mme Bringard, greffier de chambre ;

Sur le rapport de Mme Slove, conseiller référendaire, les observations de la SCP Lyon-Caen, Fabiani et Thiriez, avocat de M. Soustiel, de la SCP Parmentier et Didier, avocat de la société Intuitive Surgical, les conclusions de M. Allix, avocat général, et après en avoir délibéré conformément à la loi ;

Attendu selon l'arrêt attaqué (Versailles, 15 septembre 2005), que M. Soustiel, engagé le 1er décembre 1999 en qualité de directeur commercial par la société Intuitive Surgical, filiale française du groupe américain Intuitive Surgical Inc, a été licencié le 16 décembre 2002 pour motif économique ;

Sur le premier moyen :

Attendu qu'il n'y a pas lieu de statuer sur ce moyen qui ne serait pas de nature à permettre l'admission du pourvoi ;

Sur le second moyen :

Attendu qu'il est fait grief à l'arrêt d'avoir débouté le salarié de sa demande de dommages-intérêts formulée au titre de la perte de ses droits sur des options de souscription d'actions alors, selon le moyen, *qu'aux termes de l'article L. 121, alinéa 2 du code du travail, le contrat de travail, dès lors qu'il est passé par écrit, doit être rédigé en français ; qu'aux termes de l'alinéa 5, l'employeur ne peut se prévaloir à l'encontre du salarié auquel elles feraient grief, des clauses d'un contrat de travail qui méconnaîtraient l'une ou l'autre des règles édictées par l'article L. 121-1 du code du travail ; qu'il résulte de la combinaison de ces deux dispositions que les clauses d'un contrat de travail ou de tout autre document qui lui est annexé ne sauraient être opposées à un salarié dès lors qu'elle sont rédigées en anglais ; qu'en faisant application du plan stocks-options annexé au contrat de travail de M. Soustiel alors qu'il était rédigé en anglais et au seul prétexte qu'il s'agissait là d'une langue que maîtrisait le salarié, la cour d'appel a violé l'article L. 121-1 du code du travail ;*

Mais attendu que la cour d'appel qui a constaté que le plan d'option de souscription d'actions de la société Intuitive Surgical Inc, rédigé en anglais, avait été communiqué au salarié qui l'avait signé et qu'il n'était pas contesté que ce dernier maîtrisait parfaitement la langue anglaise tant

3                                                                                                    1036

à l'écrit qu'à l'oral, a pu décider que les clauses de ce plan lui étaient opposables ; que le moyen n'est pas fondé ;

PAR CES MOTIFS :

REJETTE le pourvoi ;

Condamne M. Soustiel aux dépens ;

Vu l'article 700 du nouveau code de procédure civile, rejette la demande ;

Ainsi fait et jugé par la Cour de cassation, chambre sociale, et prononcé par le président en son audience publique du seize mai deux mille sept.