**EXHIBIT 3**

STOCK OPTION AGREEMENT
PURSUANT TO 2003 STOCK OPTION PLAN
OF CDC IXIS FINANCIAL GUARANTY HOLDING

**THIS STOCK OPTION AGREEMENT** (the "Agreement") is dated as of January 30, 2004 by and between CDC IXIS FINANCIAL GUARANTY HOLDING, a French company (the "Company"), and KATHLEEN G. CULLY, an individual employee of the Company or one of its Affiliated Companies ("Beneficiary").

Capitalized terms not defined herein shall have the meanings ascribed to them in the CDC IXIS FINANCIAL GUARANTY HOLDING 2003 Stock Option Plan (the "Plan").

**1.    Grant of Options.** The Company hereby grants to Beneficiary options to subscribe to One Hundred Forty Three Thousand Four Hundred Thirteen and Twenty One-Hundredths (143,413.20) non-voting Investment Certificates of the Company, to be issued in accordance with Section 3 of the Plan (the "Options"). Prior to the Listing Date, the securities subject to the Options shall be Investment Certificates. From and after the Listing Date, or such other date as may be determined by the Executive Board and approved by the Supervisory Board, the securities subject to the Options shall be Shares. Shares issued pursuant to the Plan shall be subject to the terms and conditions applicable to Investment Certificates.

**2.    Exercise Price of Options.** The exercise price is 9.29 Euros per Investment Certificate.

**3.    Date of Grant and Term of Options.** The Date of Grant of the Options is January 30, 2004. The Term of the Options will expire on the tenth anniversary of the Date of Grant at 12:00 (Paris time), January 30, 2004 (expiration of the "Term of the Options"), unless sooner terminated as provided in this Agreement or the Plan.

**4.    Vesting and Date of Permitted Exercise.** The Options will vest according to the following vesting schedule:

    8.3% on the Date of Grant
    16.7 % on the first anniversary of the Date of Grant, i.e. January 30, 2005
    25% on the second anniversary of the Date of Grant, i.e. January 30, 2006
    25% on the third anniversary of the Date of Grant, i.e. January 30, 2007
    16.7% on the fourth anniversary of the Date of Grant, i.e. January 30, 2008
    8.3% on the fifth anniversary of the Date of Grant, i.e. January 30, 2009

Vested Options may be exercised from and after the fourth anniversary of the date of grant, i.e. January 1, 2008. The Options may not be exercised unless Beneficiary is an employee of the Company or an Affiliated Company as of the Date of Permitted Exercise, according to the definition of "Continuous Status as a Beneficiary."

1

5. **Termination of Continuous Status as a Beneficiary.**

A) <u>Reason other than death, Disability or voluntary termination</u>. If Beneficiary's Continuous Status as a Beneficiary is terminated by Beneficiary or by the Company or an Affiliated Company for a reason other than death, Disability or voluntary termination subsequent to the Date of Permitted Exercise, Beneficiary may exercise the vested portion of the Options within ninety (90) days after the date of such termination, or in the event that Beneficiary's Continuous Status as a Beneficiary is terminated prior to the Date of Permitted Exercise, for a period of ninety (90) days from and after the Date of Permitted Exercise, but in no event later than the expiration of the Term of the Options.

B) <u>Willful or serious misconduct</u>. In the event that Beneficiary's Continuous Status as a Beneficiary with the Company or an Affiliated Company is terminated for willful or serious misconduct subsequent to Date of Permitted Exercise, vested options may be exercised for a period of fifteen (15) days from the date of such termination. In the event that Beneficiary's Continuous Status as a Beneficiary is terminated for willful or serious misconduct prior to the Date of Permitted Exercise, options vested at time of such termination may be exercised for a period of fifteen (15) days from and after the Date of Permitted Exercise, but in no event later than the expiration of the Term of the Options.

C) <u>Voluntary termination</u>. In the event that Beneficiary's Continuous Status as a Beneficiary with the Company or an Affiliated Company is terminated by Beneficiary due to voluntary termination subsequent to the Date of Permitted Exercise, Beneficiary may exercise the vested portion of the Options within ninety (90) days after the date of such termination. In the event that Beneficiary's Continuous Status as a Beneficiary is terminated by Beneficiary due to voluntary termination prior to the Date of Permitted Exercise, Beneficiary may exercise Beneficiary's vested Options as of the date of termination within a period of ninety (90) days from and after the Date of Permitted Exercise, but in no event later than the expiration of the Term of the Options, unless the Executive Board determines to modify the period of exercisability.

Notwithstanding the foregoing, in the event of Beneficiary's retirement from the Company, as set forth in Sections 2(i) and 2(ii) of the Plan, or transfers among affiliates of the Company, as set forth in Section 2(iii) of the Plan, unvested Options shall continue to vest according to the Vesting Schedule herein and vested Options shall be exercisable from the Date of Permitted Exercise until the expiration of the Term of the Options.

D) <u>Disability</u>. In the event that Beneficiary's Continuous Status as a Beneficiary with the Company or an Affiliated Company is terminated due to Disability subsequent to the Date of Permitted Exercise, Beneficiary may exercise vested Options within a period of twelve (12) months from the date of such termination. In the event that Beneficiary's Continuous Status as a Beneficiary is terminated prior to the Date of Permitted Exercise, Beneficiary may exercise vested Options within a period of twelve (12) months from and

2

after the Date of Permitted Exercise, but in no event later than the expiration of the Term of the Options.

E) <u>Death</u>. In the event of the death of the Beneficiary while employed by the Company or an Affiliated Company, the Options shall become immediately vested and exercisable and may be exercised at any time within six months of the date of death by Beneficiary's estate or by a person who acquires the right to exercise such Options by bequest or inheritance.

6. **Exercise of Options.** The Options may be exercised by notice to the Company in such form as shall be specified by the Company, at the following address: 31-33 rue de Mogador, 75009 Paris, France, or at such other address as may be specified by the Company, to be duly given by the person entitled to exercise the Options, specifying the number of Investment Certificates to be purchased. An Option may not be exercised for a fraction of an Investment Certificate. The purchase price of the Investment Certificates as to which the Option is exercised must be paid in full at the time of exercise in Euro currency, in cash, by check or wire transfer, offset against receivables or by means of Cashless Exercise. Cashless Exercise shall be effected by means of a properly executed notice, together with such other documentations as the Executive Board (and the broker, if applicable) shall require to effect the exercise of the Options and the sale of the Investment Certificates on the same day. Investment Certificates to be issued upon the exercise of Options shall be issued in the name of the Beneficiary. Upon exercise of the Options, the Investment Certificates issued to the Beneficiary shall be entitled to dividends for the fiscal year during which the Options are exercised.

7. **Tax and Social Security Withholding Obligations.** As a condition to the delivery of Investment Certificates upon the exercise of the Options, Beneficiary agrees to pay to the Company an amount sufficient to satisfy any applicable tax and social security withholding obligations. Alternatively, Beneficiary agrees that the Company and/or Beneficiary's employer are expressly authorized, to the extent permitted by law, to deduct the appropriate withholding taxes and social security contributions from Beneficiary's compensation in order to satisfy any income tax, social security, or other employment-related taxes related to Beneficiary's participation in the Plan. In the event that the amount withheld by the Company or Beneficiary's employer is not sufficient to satisfy the Company's tax or social security obligations, Beneficiary will reimburse the Company or Beneficiary's employer on demand in cash in the amount of the deficiency.

8. **Rights as a holder of Investment Certificates.** Beneficiary will not have any rights as a holder of Investment Certificates subject to the Options prior to the issuance to Beneficiary of such Investment Certificates.

9. **Transferability.** The Options are not transferable to third parties other than by will or by the laws of descent and distribution. The Options may be exercised only by Beneficiary during her lifetime or by Beneficiary's heirs or estate in the event of Beneficiary's death.

3

10. **Change of Control.** In the event of any of the following events during the term of the Options: (i) merger of the Company with or into another corporation as a result of which the shareholders of the Company cease to own 50% or more of the surviving corporation by vote or value ("Merger"), (ii) the sale of substantially all of the assets of the Company or any Affiliated Company, including the portfolio of insured risks ("Sale of Assets"), or (iii) a Change in Control, whether or not such an event is the result of an initial public offering, all of the Options shall become fully vested and exercisable for the duration of their term as of the effective date of such Merger, Sale of Assets or Change in Control. The successor corporation or purchaser(s) of control of the Company in a Merger, Sale of Assets or Change in Control, as the case may be, shall assume the rights and obligations of the Company pursuant to the Plan, including the provisions of Sections 17 and 19 thereof.

Notwithstanding the foregoing, said successor corporation or purchaser(s) of control of the Company, as a result of a Merger, Sale of Assets or Change in Control, may effect a replacement of the Options by issuing other stock options, rights or entitlements that such party or parties determine(s) in good faith to be of a value that is at least equal to that of the Options, to be validated by a third party jointly chosen by the Executive Board and the successor corporation or purchaser(s) of control of the Company. In the event of a replacement of the Options, the Options shall become fully vested and exercisable on the effective date thereof. Beneficiary agrees to exchange the Options for new stock options in proportion to Beneficiary's respective Options at such time, as determined with reference to the then-remaining Term of the Options. In the event of an Initial Public Offering not resulting in a Change of Control, there will be no change in the terms of the Options. As a consequence of accelerated vesting and exercise of an Option or substitution of an Option, Beneficiary may be ineligible for certain preferential tax and social security treatment that may be available in France and in other jurisdictions.

11. **Right of the Company to redeem Beneficiary's Investment Certificates.** At any time prior to the Listing Date, particularly in the event of the termination of Beneficiary's Continuous Status as a Beneficiary, and subject to any restriction under French corporate laws or other laws, the Company shall have the right (i) to redeem any Investment Certificates issued to Beneficiary pursuant to this Agreement, or (ii) to be substituted in such right by one or more of its shareholders or by one or more third parties ("Substituted Party (ies)"). Upon the exercise by the Company or a Substituted Party(ies) of its right of redemption, Beneficiary agrees to sell Beneficiary's Investment Certificates to the Company or to a Substituted Party(ies) for a redemption price equal to the Fair Market Value of the Investment Certificates according to the most recent valuation of the Company as of the date on which notice is given of the exercise of the redemption right.

The Company or a Substituted Party(ies) may exercise its redemption right by sending Beneficiary a written notice, specifying the number of Investment Certificates to be redeemed. The notice shall be valid if sent to Beneficiary's last known mailing address as shown on the books and records of the Company. The Company or a Substituted

4

Party(ies) shall then promptly pay Beneficiary the total redemption price in the form of cash or by check or wire transfer.

**12. Beneficiary's Right to Require the Company to redeem.** From and after the Date of Permitted Exercise, Beneficiary may require the Company or a Substituted Party(ies) as communicated to Beneficiary to repurchase the Investment Certificates that Beneficiary may have acquired under the Plan, in accordance with the provisions set forth in Section 19 of the Plan or in a separate agreement. Such right will terminate as of the Listing Date.

**13. No Right to Continued Employment.** Neither the Options nor this Agreement confers upon Beneficiary any right to continue to be an employee of the Company or any of its Affiliated Companies or interferes in any way with the right of the Company or any of its Affiliated Companies to terminate Beneficiary's employment at any time.

**14. No Right to Future Benefits.** The Plan and the benefits offered thereunder are provided by the Company on an entirely discretionary basis, and the Plan creates no vested rights in participants other than as specifically set forth in this Agreement and in the Plan. The Beneficiary understands and agrees that the benefits offered under this Agreement and the Plan are not part of Beneficiary's salary and that the Grant of Options does not create any contractual or other right to receive a grant of stock options or benefits in lieu of stock options in the future. Future grants, if any, will be at the sole discretion of the Company, including, but not limited to, the timing of any grant, the number of options, vesting provisions and the exercise price.

**15. Compliance with Law.** No Investment Certificates will be issued upon the exercise of the Options unless counsels for the Company are satisfied that such issuance will be in compliance with all applicable laws.

**16. Terms of Plan Govern.** This Agreement and the terms of the Options will be governed by the terms of the Plan, which is hereby incorporated by reference in this Agreement. In the event of any ambiguity in this Agreement or any inconsistency between the terms of this Agreement and the terms of the Plan, the terms of the Plan will govern. By Beneficiary's initials on each page of this Agreement and by Beneficiary's signature below, Beneficiary acknowledges receipt of the Plan and agrees to be bound by its terms and by this Agreement.

**17. Amendments.** Subject to certain exceptions, the Plan may be amended by the Executive Board at any time in any manner. No amendment of the Plan will adversely affect in any material manner any of Beneficiary's rights under the Option without Beneficiary's consent.

**18.    Stock Ownership Risks.** The future value of the underlying Investment Certificates is unknown and cannot be predicted. In the event that the underlying Investment Certificates does not increase in value in relation to the exercise price, or if such Investment Certificates decrease in value, the value of the Options could be of negligible value. Beneficiary is responsible for obtaining all necessary exchange control approvals or filings, where required, in order to remit payment to the Company of the exercise price of the Options.

**19.    Data Privacy.** Beneficiary authorizes Beneficiary's employer to furnish the Company (and any agent of the Company administering the Plan or providing Plan record-keeping services) with such information and data as it requests in order to facilitate the grant of Options and the administration of the Plan. In addition, Beneficiary agrees that certain routine data concerning Beneficiary and Beneficiary's participation in the Plan might be transmitted and communicated outside the country of Beneficiary's place of employment or residence to enable the Company (and its agent, if any) to administer the Plan. Beneficiary will have access to the data collected and will be able to amend or rescind this authorization upon thirty (30) days written notice to the Company.

**20.    Governing Law.** This Agreement will be governed by and construed in accordance with the laws of France.

**IN WITNESS WHEREOF,** this Agreement has been duly executed by the undersigned as of the date first written above.


**CDC IXIS FINANCIAL GUARANTY HOLDING**

By: _____
Jacques Roffo
President of the Executive Board


Prior to signature, the Beneficiary shall inscribe the following terms by hand: "Acknowledged and Approved"


**Beneficiary:**

_____
Kathleen Cully

6