# EXHIBIT 11

# CIFG SERVICES, INC.

## RESTRICTED STOCK AGREEMENT

CIFG Services, Inc., a Delaware corporation, hereby offers shares of Restricted Stock to the Offeree named below. The terms and conditions of the offer are set forth in this cover sheet and in the attached Restricted Stock Agreement.

Date of Offer: [xxxxxxxxxxxxxx xx, xxxx]

Name of Offeree: [xxxx xxxxxx]

Offeree's Social Security Number: [xxx-xx-xxxx]

Number of Shares of Restricted Stock Offered: [xxx,xxx] **(representing .085 percent of outstanding shares of common stock of CIFG Holding on the Date of Offer)**

Amount Paid by Offeree for the Shares of Restricted Stock Offered: **$ 0.00**

Aggregate Fair Market Value of Restricted Stock on Date of Offer: **[$ xx.xx]**

Vesting Start Date: [xxxxxxxxxxxxx xx, xxxx]

*By signing this cover sheet, you agree to all of the terms and conditions described in the attached Restricted Stock Agreement. You are also acknowledging receipt of this Agreement.*

Offeree: _____
(Signature)

Company: _____
(Signature)

Title: _____

Attachment

#355350v5 09076-0001-000

## CIFG SERVICES, INC.

## RESTRICTED STOCK AGREEMENT

**This Agreement**  The purpose of this Agreement is to promote the long-term success of the Company by offering you an opportunity to acquire a proprietary interest in the success of the CIFG Holding, or to increase such interest, and to encourage you to continue to provide services to the Company.

You and the Company agree to execute such further instruments and to take such further action that the Company determines to be reasonably necessary to carry out the intent of this Agreement. This Agreement, the attached Exhibits, and such further instruments constitute the entire understanding between you and the Company regarding this Offer of Restricted Stock. Any prior agreements, commitments, letters of engagement, offer letters of employment, or negotiations are superseded.

**Definitions**  The following definitions shall apply:

"**Affiliate**" means any ~~Parent or~~ Subsidiary of the Company or any other entity, if ~~the Company~~ CIFG Holding owns, directly or indirectly, or is the beneficiary of a trust owning, not less than 50% of the voting shares of such other entity.

"**CIFG Holding**" means CIFG Holding, a corporation organized under the laws of the Republic of France.

"**Code**" means the United States Internal Revenue Code of 1986, as amended.

"**Committee**" means the person or persons appointed by the Board of Directors of the Company. If no person or persons are appointed, the Board of Directors of the Company shall serve as the Committee.

"**Common Stock**" means shares of common stock of CIFG Holding.

"**Company**" means CIFG Services, Inc., a Delaware corporation.

"**Fair Market Value**" means the market value of Common Stock determined (i) at the Company's expense, by an independent appraiser of the Company's choosing or (ii) if the Common Stock is publicly traded, by reference to the price for such Common Stock on an established stock exchange or securities market ~~, if the stock is publicly traded~~.

"**Liquidity Event**" means (i) any person (other than the existing shareholder(s) of CIFG Holding) becomes a beneficial owner, directly or indirectly, of securities of CIFG Holding representing more than 50

2

~~percent~~ % of the combined voting power of CIFG Holding's then outstanding securities entitled to vote in the election of directors of the Company, (ii) the closing of a merger or consolidation of CIFG Holding with any other corporation or entity as a result of which the existing shareholder(s) of CIFG Holding, collectively, would not, immediately after the consolidation or merger, beneficially own, directly or indirectly, shares representing in the aggregate 50 ~~percent~~% or more of the combined voting power of the voting securities of the corporation or entity issuing cash or securities in the consolidation or merger, or (iii) the Common Stock is listed on an established stock exchange or is quoted regularly on an established securities market.

"**Offer**" means an offer of Restricted Stock under this Agreement.

~~"**Parent**" means any company (other than the Company) in an unbroken chain of companies ending with the Company, if each of the companies other than the Company owns units or stock (as applicable) possessing fifty percent (50%) or more of the total combined voting power of all classes of units or stock (as applicable) in one of the other companies in such chain, disregarding any voting trust agreement. A company that attains the status of a Parent on a date after the Date of Offer shall be considered a Parent commencing as of the date Parent status begins.~~

"**Restricted Stock**" means shares of Common Stock offered under this Agreement.

"**Securities Act**" means the Securities Act of 1933, as amended.

"**Service**" means your service as a common-law employee of the Company or an Affiliate.

"**Subsidiary**" means any company (other than the Company) in an unbroken chain of companies beginning with the Company, if each of the companies other than the last company in the unbroken chain owns, or is the beneficiary of a trust owning, units or stock (as applicable) possessing fifty percent (50%) or more of the total combined voting power of all classes of units or stock (as applicable) in one of the other companies in such chain, ~~disregarding any voting trust agreement~~. A company that attains the status of a Subsidiary on a date after the Date of Offer shall be considered a Subsidiary commencing as of the date Subsidiary status begins.

| | |
|---|---|
| **Powers of the Committee** | This Agreement shall be administered by the Committee. The Committee shall have the authority, in its discretion, to construe and interpret the terms of this Agreement; to modify, amend or terminate this Agreement at any time and for any reason, provided that such modification, amendment |

or termination shall not materially adversely affect any of your rights under this Agreement, except with your consent; and to make all other determinations deemed necessary or appropriate for administering this Agreement. The Committee's decisions, determinations and interpretations shall be final and binding.

Each member of the Committee shall be indemnified and held harmless by the Company against and from (i) any loss, cost, liability, or expense that may be imposed upon or reasonably incurred by him or her in connection with or resulting from any claim, action, suit, or proceeding to which he or she may be a party or in which he or she may be involved by reason of any action taken or failure to act under this Agreement, and (ii) from any and all amounts paid by him or her in settlement thereof, with the Company's approval, or paid by him or her in satisfaction of any judgment in any such claim, action, suit, or proceeding against him or her, provided he or she shall give the Company an opportunity, at its own expense, to handle and defend the same before he or she undertakes to handle and defend it on his or her own behalf. The foregoing right of indemnification shall not be exclusive of any other rights of indemnification to which such persons may be entitled under the Company's certificate of incorporation, bylaws, by contract, as a matter of law, or otherwise, or under any power that the Company may have to indemnify them or hold them harmless.

**Offer of Restricted Stock**   The Company grants you the number of shares of Restricted Stock shown on the cover sheet of this Agreement. The Offer is subject to the terms and conditions of this Agreement. The Offer shall be deemed accepted by the Company upon the Company's receipt of the cover sheet with your signature.

| | |
|---|---|
| **Vesting** | As long as you render continuous Service to the Company (or an Affiliate), you will become vested as to 25% of the total number of shares of Restricted Stock awarded, as shown above on the cover sheet, on each of the first four anniversaries of the Vesting Start Date. After determining your vested fraction the resulting aggregate number of shares will be rounded to the nearest whole number. In the event that your Service ceases for whatever reason prior to the fourth anniversary of the Vesting Start Date, you will forfeit to the Company all of the unvested Restricted Stock subject to this Offer. Notwithstanding the foregoing, if your Service is terminated by the Company other than for "Cause" prior to the fourth anniversary of the Vesting Start Date, you will vest in an additional 25 percent of the Restricted Stock that is unvested as of such termination date (however, fractional shares shall be disregarded). For this purpose, "Cause" includes, but is not limited to, gross negligence or willful misconduct in the performance of your duties, the perpetration of a fraud, crime or other act of serious misconduct, willful misrepresentation of information pertaining to your employment or your willful disobedience to the directives of management. |
| **Protection Against Dilution** | The Company will adjust the number of shares of your Restricted Stock in the event of any increases or decreases in the number of outstanding shares of Common Stock resulting from a stock split, reverse stock split, stock dividend, combination or reclassification of such Common Stock, or other increase or decrease in the number of outstanding shares of such Common Stock effected without receipt of consideration by CIFG Holding. |
| **Repurchase on Change of Business; No Liquidity Event** | In the event that the Company ceases on any date to provide administrative and other management services to ~~its~~ one or more ~~affiliates~~ Affiliates in the CIFG Group that are in the business of providing financial guarantees, your shares that have vested hereunder as of such date shall immediately be purchased by the Company or CIFG Holding for their Fair Market Value as of such date.<br><br>If a Liquidity Event has not occurred by March 31, 2007, your shares that have vested hereunder as of such date shall immediately be purchased by the Company or CIFG Holding for their Fair Market Value as of such date. |

5

| | |
|---|---|
| **Right of Purchase** | For a period of 180 days following termination of your Service for any reason, the Company shall have the right to purchase all of your shares that have vested under this Agreement. If the Company exercises its right to purchase such shares, the purchase price shall be the Fair Market Value of those shares on the date of purchase and shall be paid in cash. The Company will notify you of its intention to purchase such shares. The Company's right of purchase shall terminate in the event that the Common Stock is listed on an established stock exchange or is quoted regularly on an established securities market. |
| **Code Section 83(b) Election** | Under Section 83 of the Code, the Fair Market Value of the Restricted Stock on the date it vests (i.e., any forfeiture restrictions applicable to such Restricted Stock lapse) will be reportable as ordinary income at that time. For this purpose, "forfeiture restrictions" include surrender to the Company of unvested Restricted Stock as described above. You may elect to be taxed at the time the Restricted Stock is acquired to the extent that the Fair Market Value of the Restricted Stock exceeds the amount of consideration paid by you (if any) for such Restricted Stock at that time rather than when such Restricted Stock ceases to be subject to such forfeiture restrictions, by filing an election under Section 83(b) of the Code with the Internal Revenue Service within thirty (30) days after the Date of Offer. The form for making this election is attached as <u>Exhibit A</u> hereto. Failure to make this filing within the thirty (30) day period will result in the recognition of ordinary income by you (in the event the Fair Market Value of the Restricted Stock increases after the date of purchase) as the forfeiture restrictions lapse. **YOU ACKNOWLEDGE THAT IT IS YOUR SOLE RESPONSIBILITY, AND NOT THE COMPANY'S, TO FILE A TIMELY ELECTION UNDER CODE SECTION 83(b), EVEN IF YOU REQUEST THE COMPANY OR ITS REPRESENTATIVES TO MAKE THIS FILING ON YOUR BEHALF. YOU ARE RELYING SOLELY ON YOUR OWN ADVISORS WITH RESPECT TO THE DETERMINATION AS TO WHETHER A SECTION 83(b) ELECTION IS APPLICABLE TO YOUR SITUATION AND WITH RESPECT TO THE DECISION AS TO WHETHER OR NOT TO FILE A CODE SECTION 83(b) ELECTION.** |
| **Escrow** | The certificates for the Restricted Stock shall be deposited in escrow with the General Counsel of the Company. The certificates shall be accompanied by a duly executed Assignment Separate from Certificate in the form attached hereto as Exhibit B. The deposited certificates shall remain in escrow until such time as the certificates are to be released or otherwise surrendered for cancellation. |

| | |
|---|---|
| **Leaves of Absence** | For purposes of this Agreement, your Service does not terminate when you go on a *bona fide* leave of absence that was approved by the Company (or its Affiliate) in writing, if the terms of the leave provide for continued Service crediting, or when continued Service crediting is required by applicable law. Your Service terminates in any event when the approved leave ends, unless you immediately return to active work.<br><br>The Company determines which leaves count for this purpose, and when your Service terminates for all purposes under this Agreement. |
| **Rights** | Except as provided in this Agreement, you shall have all the rights and privileges of a stockholder of CIFG Holding, including the right to vote and to receive dividends (if any). |
| **Restrictions on Issuance** | Notwithstanding any other provision of this Agreement to the contrary, the obligations of the Company under this Agreement shall be subject to all applicable laws, rules and regulations, including the Securities Act, as amended, and such approval by any regulatory body as may be required. The Company reserves the right to restrict, in whole or in part, the delivery of Restricted Stock prior to the satisfaction of all legal requirements relating to the issuance of such Restricted Stock. |
| **Withholding Taxes** | This Offer is conditioned on you making arrangements satisfactory to the Company for the satisfaction of any withholding tax obligations that arise in connection with this Agreement. |
| **Transfer of Restricted Stock** | Unvested Restricted Stock shall not be anticipated, assigned, attached, garnished, optioned, sold, transferred or made subject to any creditor's process, whether voluntarily, involuntarily or by operation of law. Any act in violation of this paragraph shall be void. |
| **Restrictions on Resale** | By signing this Agreement, you agree not to sell any of the shares that have vested under this Agreement at a time when applicable laws, regulations or Company, CIFG Holding, or underwriter trading policies prohibit sale. In particular, in connection with any underwritten public offering by CIFG Holding of its equity securities pursuant to an effective registration statement filed under the Securities Act, including CIFG Holding's initial public offering, you shall not sell, make any short sale of, loan, hypothecate, pledge, grant any option for the purchase of, or otherwise dispose or transfer for value or agree to engage in any of the foregoing transactions with respect to any shares that have vested under this Agreement without the prior written consent of the Company, CIFG Holding or its underwriters, for such period of time after the effective date of such registration statement as may be requested by the Company or the underwriters. If the sale of shares that have vested under this Agreement is not registered under the Securities Act, but an exemption is available which requires an investment or other representation and warranty, you |

|  |  |
|---|---|
|  | shall represent and agree that the Common Stock being acquired are being acquired for investment, and not with a view to the sale or distribution thereof, and shall make such other representations and warranties as are deemed necessary or appropriate by the Company and its counsel. You further agree to provide a copy of the Agreement and the Plan, or arrange to have a copy of the Agreement and the Plan, delivered to any transferee of the shares. |
| **Right of First Refusal** | Notwithstanding any other provision of this Agreement, in the event that you propose to sell, pledge or otherwise transfer to a third party any shares that have vested under this Agreement, or any interest in such shares, the Company shall have the "Right of First Refusal" with respect to all (and not less than all) of such shares. If you desire to transfer shares that have vested under this Agreement, you must give a written "Transfer Notice" to the Company describing fully the proposed transfer, including the number of shares proposed to be transferred, the proposed transfer price and the name and address of the proposed transferee. The Transfer Notice shall be signed both by you and by the proposed new transferee and must constitute a binding commitment of both parties to the transfer of the shares. The Company shall have the right to purchase all, and not less than all, of the shares on the terms of the proposal described in the Transfer Notice (subject, however, to any change in such terms permitted in the next paragraph) by delivery of a notice of exercise of the Right of First Refusal within thirty (30) days after the date when the Transfer Notice was received by the Company. The Company's rights under this subsection shall be freely assignable, in whole or in part. If the Company fails to exercise its Right of First Refusal within thirty (30) days after the date when it received the Transfer Notice, you may, not later than ninety (90) days following receipt of the Transfer Notice by the Company, conclude a transfer of the shares subject to the Transfer Notice on the terms and conditions described in the Transfer Notice. Any proposed transfer on terms and conditions different from those described in the Transfer Notice, as well as any subsequent proposed transfer by you, shall again be subject to the Right of First Refusal and shall require compliance with the procedure described in the paragraph above.

If the Company exercises its Right of First Refusal, the parties shall consummate the sale of the shares on the terms set forth in the Transfer Notice within sixty (60) days after the date when the Company received the Transfer Notice (or within such longer period as may have been specified in the Transfer Notice); provided, however, that in the event the Transfer Notice provided that payment for the shares was to be made in a form other than lawful money paid at the time of transfer, the Company shall have the option of paying for the shares with lawful money equal to the present value of the consideration described in the Transfer Notice. |

8

|||
|---|---|
| | The Company's Right of First Refusal shall inure to the benefit of its successors and assigns and shall be binding upon any transferee of the shares. |
| | The Company's Right of First Refusal shall terminate in the event that the Common Stock is listed on an established stock exchange or is quoted regularly on an established securities market. |
| **No Retention Rights** | This Agreement is not an employment agreement and does not give you the right to be retained by the Company (or its Affiliates). The Company (or its Affiliate) reserves the right to terminate your Service at any time and for any reason, subject to applicable laws or a written employment agreement (if any). |
| **Legends** | THE SHARES REPRESENTED BY THIS AGREEMENT HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT") OR UNDER THE SECURITIES LAWS OF ANY STATE AND MAY NOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF UNLESS EITHER (A) THEY ARE REGISTERED UNDER THE ACT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR (B) THE COMPANY SHALL HAVE RECEIVED EVIDENCE SATISFACTORY TO IT (WHICH MAY INCLUDE AN OPINION OF COUNSEL) THAT SUCH PROPOSED DISPOSITION IS EXEMPT FROM SUCH REGISTRATION. |
| | THE SHARES REPRESENTED BY THIS AGREEMENT ARE SUBJECT TO CERTAIN RESTRICTIONS ON TRANSFER SET FORTH IN AN AGREEMENT BETWEEN THE COMPANY AND THE REGISTERED HOLDER, OR HIS OR HER PREDECESSOR IN INTEREST. A COPY OF SUCH AGREEMENT IS ON FILE AT THE PRINCIPAL OFFICE OF THE COMPANY AND WILL BE FURNISHED UPON WRITTEN REQUEST TO THE SECRETARY OF THE COMPANY BY THE HOLDER OF RECORD OF THE SHARES REPRESENTED BY THIS AGREEMENT. |
| **Applicable Law** | This Agreement will be interpreted and enforced under the laws of the State of New York. |

*By signing the cover sheet of this Agreement, you agree to all of the terms and conditions described above.*

**EXHIBIT A**

**ELECTION UNDER SECTION 83(b) OF**
**THE INTERNAL REVENUE CODE**

      The undersigned hereby makes an election pursuant to Section 83(b) of the Internal Revenue Code with respect to the property described below and supplies the following information in accordance with the regulations promulgated thereunder:

1.    The name, address and social security number of the undersigned:

        _____

        _____

        _____

        Social Security No. _____

2.    Description of property with respect to which the election is being made:

        _____ shares of common stock of CIFG Holding.

3.    The date on which the property was transferred is _____, **[YEAR]**.

4.    The taxable year to which this election relates is calendar year _____, **[YEAR]**.

5.    Nature of restrictions to which the property is subject:

        The shares of stock are subject to the provisions of a Restricted Stock Agreement (the "Agreement") between the undersigned and CIFG Services, Inc. The shares of stock are subject to forfeiture under the terms of the Agreement.

6.    The fair market value of the property at the time of transfer (determined without regard to any lapse restriction) was $ _____ per share, [for a total of $_____.]

7.    The amount paid by taxpayer for the property was $_____.

8.    A copy of this statement has been furnished to CIFG Services, Inc.

Dated: _____, **[YEAR]**.

_____
[Taxpayer's Name]

Case 1:07-cv-08195-PKC    Document 23-12    Filed 01/08/2008    Page 11 of 12

# EXHIBIT B

## ASSIGNMENT SEPARATE FROM CERTIFICATE

      FOR VALUE RECEIVED and pursuant to that certain Restricted Stock Agreement dated as of **[DATE]**, the undersigned hereby sells, assigns and transfers unto **[NUMBER]** shares of the Common Stock of CIFG Holding, standing in the undersigned's name on the books of said corporation represented by certificate No. **[CERTIFICATE NUMBER]**, herewith, and does hereby irrevocably constitute and appoint attorney-in-fact to transfer the said stock on the books of the said corporation with full power of substitution in the premises.

_____

**[TYPE NAME]**

Dated: _____