**EPSTEIN BECKER & GREEN, P.C.**
Kenneth J. Kelly (KK 4195)
Lori A. Jordan (LJ 0853)
250 Park Avenue
New York, New York 10177-0077
(212) 351-4500
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
KATHLEEN G. CULLY,

               Plaintiff,

       - against -                     07 CIV. 8195 (PKC)

CIFG HOLDING, CIFG GUARANTY, CIFG
EUROPE, CIFG SERVICES, INC., CIFG
ASSURANCE NORTH AMERICA, INC., and
JACQUES ROLFO,

               Defendants.
------------------------------------------------------- x

**REPLY MEMORANDUM OF DEFENDANTS CIFG HOLDING
AND CIFG SERVICES, INC. IN SUPPORT OF MOTION TO
DISMISS CLAIMS RELATING TO LONG-TERM INCENTIVES**

ON THE BRIEF:
    Kenneth J. Kelly
    Lori A. Jordan

# TABLE OF CONTENTS

        PAGE

Preliminary Statement.................................................................................................................1

Argument .......................................................................................................................................2

I    THE FORUM SELECTION CLAUSE IN THE 2003 STOCK OPTION PLAN IS ENFORCEABLE.................................................................................................................2

        A.    Notice.....................................................................................................................2

        B.    French Law. ...........................................................................................................3

        C.    "Overreaching." ......................................................................................................4

II    PLAINTIFF HAS ABANDONED HER CLAIMS UNDER THE EXPRESS TERMS OF THE 2004 CIFG HOLDING PLANS ...............................................................5

III    ARBITRATION OF THE CIFG SERVICES PUP CLAIM IS REQUIRED........................7

Conclusion ...................................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

Chiacchia v. National Westminster Bank USA, 124 A.D.2d 626, 507 N.Y.S.2d 888 (2d Dep't 1986)..................................................................................................................2

Flores v. Lower East Side Service Center, Inc., 4 N.Y. 3d 363 (2005)...............................8

Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144 (2d Cir.), cert. denied, 543 U.S. 874 (2004)....................................................................................................................3

PaineWebber Inc. v. Bybyk, 81 F.3d 1193 (2d Cir. 1996).....................................................2

Preliminary Statement

Defendants CIFG Holding and CIFG Services, Inc. submit this memorandum in reply to plaintiff's brief and French counsel's declaration in opposition to their motion to dismiss plaintiff's claims based on theories of contract, breach of implied covenants of good faith and fair dealing, promissory estoppel and unjust enrichment, to the extent those theories purport to rely on and enforce the terms of LTI plans identified in the complaint. Defendants asserted that those plans contained either forum selection or arbitration clauses that required litigation seeking to enforce rights or obligations arising from those plans to be maintained in courts in Paris or before arbitrators in New York, as provided in the final or most recent version of the plan documents. As discussed below, with the exception of the 2003 Stock Option Plan, plaintiff is not asserting any claims based on the terms of any of the plan documents, each of which she characterizes as "drafts." (See Cully Dec. ¶¶ 16, 17, 18, 24, 32, 36.)

Defendants need not address at this time the mischaracterizations and "spin" on the facts that permeate plaintiff's opposition papers (e.g., the claim that she was barred from CIFG Services's premises, Cully Dec. 4), but which have nothing to do with the issues presented by this motion. Defendants' silence should not be deemed agreement.

Defendants also ask that the Court recall that plaintiff's circumstances were not that of the average American employee. Plaintiff was an employee of CIFG Services, Inc. (f/k/a CDC IXIS Financial Guaranty Services, Inc.; see her contract, Cully Exh. 1), which was a subsidiary of CIFG Holding, a French company. The LTI plans, involving stock or stock options, involved stock in a French parent company, and those LTI plans were all governed by French law. Moreover, as described in the declaration of Pamela Brown, the procedure for preparing separate plan documents for each successive year and the lengthy procedure for awarding LTI grants was far different from that used by American companies. Thus, what one

NY:2360323v1

might expect as usual or "customary" for an American employer's plan might not apply to these French plans.

Argument

I

THE FORUM SELECTION CLAUSE IN THE
2003 STOCK OPTION PLAN IS ENFORCEABLE

Plaintiff concedes, as she must, that she executed the 2003 Stock Option Agreement (Cully Exh. 3), and she further admits (Cully Decl. ¶ 10) that in 2004 she received both the 2003 Stock Option Agreement and the 2003 Stock Option Plan (which, unlike the other plan documents, was in final form at the time of receipt). She claims, however, that the forum selection clause in the 2003 Stock Option Plan should not be enforced because (a) she was "not provided proper notice" of the clause; (b) it is purportedly not enforceable under French law; and (c) it is "overreaching." None of these positions has any merit.

A.  Notice.

The 2003 Stock Option Agreement unambiguously incorporates by reference all of the terms and conditions of the Plan, and states as follows in section 16:

> 16. **Terms of Plan Govern.** This Agreement and the terms of the Options will be governed by the terms of the Plan, which is hereby incorporated by reference in this Agreement. In the event of any ambiguity in this Agreement and the terms of the Plan, the terms of the Plan will govern. By Beneficiary's initials on each page of this Agreement and by Beneficiary's signature below, Beneficiary acknowledges receipt of the Plan and agrees to be bound by its terms and by this Agreement.

See PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1201 (2d Cir. 1996) (quoting Chiacchia v. National Westminster Bank USA, 124 A.D.2d 626, 628, 507 N.Y.S.2d 888, 889-90 (2d Dep't 1986) (requiring that the paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may be identified "beyond all

reasonable doubt"); see also, 4 Williston on Contracts § 628, at 903-04 (3d ed. 1961). Plaintiff was a Yale Law Review editor, was formerly an attorney at a prestigious Wall Street law firm, and has 30 years experience as a complex transaction lawyer. She should not be heard to argue she did not have notice of the 2003 Stock Option Plan's explicit forum selection clause in view of the specific provision in this Argument incorporating all of the terms of the 2003 Plan and her admission that she received the 2003 Plan at the same time as the Agreement. See Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir.) ("in the absence of fraud or other wrongful act on the part of another contracting party, a party 'who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them . . . .'") (citation omitted), cert. denied, 543 U.S. 874 (2004). Moreover, her argument (Brief at 5) that the provision just quoted above that the terms of the Plan prevail over the Agreement must be an error, has no basis since the individual Agreement derives from and implements the Plan, not vice-versa. In any event, there is no ambiguity or conflicting terms as to the forum selection clause.

B.  French Law.

Attorney Noirot's declaration purports to state French law and his opinion, but it does not answer the dispositive question. He first claims that a June 21, 2005 *Cour de Cassation* decision holds that the *Conseil des Prud'hommes* ("CDP") has exclusive jurisdiction of employee stock option disputes, but he fails to advise this Court that at the time that the 2003 Stock Option Plan was drafted and the corresponding Agreement executed, the law in France was unclear and a subject of debate, and that Stock Option litigation involving corporate officers, such as plaintiff, have remained before the *Tribunal de Grande Instance* ("Tribunal") as provided in the 2003 Stock Option Plan. (See Declaration of Patrick Tardivy dated January 19, 2008, submitted herewith.)

Attorney Tardivy further explains what Attorney Noirot also omits: if a French court should now hold that the *Tribunal* was not the correct court, the parties, who agreed to application of French law and exclusive jurisdiction in Paris, would not be without any remedy, as Attorney Noirot seems to imply (¶ 9). Rather, they can pursue their claims in the *CDP*. Even though the Plan does not expressly name that forum, French law will read that mandatory provision into the Plan, as it would with any other employment or employment-related agreement or plan that provided for exclusive jurisdiction in France. In this regard, Cully's papers and Noirot's declaration are devoid of any facts that would even hint the *CDP* would not be able to provide plaintiff with procedural fairness and complete relief if merited.

Attorney Tardivy also demonstrates (¶¶ 11-23) that the forum selection clause is as valid under French law as it is under New York law. Attorney Tardivy shows that the unambiguous incorporation clause quoted above would be given effect under French law, whether it is treated as a unilateral benefit grant or a contract.

C.   "Overreaching."

Plaintiff also speculates (Cully Decl. ¶ 8) that "had [she] been aware," when she voluntarily left ACA in 2002 to follow Mr. Freed to CIFG Services, that a forum selection clause would someday be included in the stock option award documentation, she "would have objected to it" because it was "unfairly biased" in favor of the employer. The Court should ignore this self-serving, hypothetical testimony, particularly since neither she nor Attorney Noirot offers any explanation why French courts specializing in employment disputes or French law are "biased" in any way against employees, or that such courts' procedures are "unreasonable" or "unjust." (Brief at 14.) Significantly, plaintiff's declaration does not state that she objected to the clause at any time, or asked for and was refused any modification of that clause, or was in fact even presented with what she now characterizes as a "take it or leave it" situation. From the contents

of the 2003 Stock Option Agreement, it appears that she readily agreed to accept options for 143,413.20 shares having a $450,000 "notional" value in 2004, even though the terms of the Agreement as to the grant and vesting were different from the "1/3-1/3-1/3" provision in her employment agreement.

Plaintiff's assertion now that she had "no choice" but to accept the 2003 Stock Option Plan despite the forum selection clause (which contradicts her argument two pages earlier in her brief that she did not have adequate notice of that term) is specious. She crossed the Rubicon regarding forfeiting her vested and unvested benefits at ACA when she voluntarily left there in late 2002 allegedly in reliance on a promise in her offer letter of $450,000 "notional" value in options without any discussion about forum selection clauses, and no one at CIFG forced her to give up the ACA benefits at that time. By the time she received the 2003 Stock Option Agreement two years later, the ACA benefits were long gone.

There is no valid basis for this Court to decline to enforce the forum selection clause in the 2003 Stock Option Plan.

II

PLAINTIFF HAS ABANDONED HER CLAIMS UNDER
THE EXPRESS TERMS OF THE 2004 CIFG HOLDING PLANS

Plaintiff's opposition brief demonstrates the dilemma she faces. She seeks to enforce the 2004 LTI awards, awarded in 2005 and the details of which were specified 2006, that consist of three separate types of benefits – stock options, restricted stock and performance units. She asserts, however, that the stock option agreement and restricted stock agreement sent to her (Cully Exhs. 6 and 12) were "invalidly altered" (Brief at 18) from what she was allegedly promised, and she refused to sign the two agreements as presented to her. Instead, she struck as unacceptable and supposedly contrary to French law several provisions regarding the definition

of change in control and retirement (ironically, not the forum selection clauses; see Cully Exh. 10 ¶ 13G and Cully Exh. 13 ¶ 14 F). She then substituted her own definitions of those terms based on the advice of her French law counsel from Columbia Law School. CIFG rejected the proposed modifications. Given her current position on the parties' inability to agree on these material items and CIFG's rejection, plaintiff asserts that she is "not . . . seeking to enforce the Modified 2004 Stock Option Plan or the Modified 2004 Restricted Stock Plan," on which documents defendants base part of their motion. Defendants accept that representation.

        Further, plaintiff's further position, as she now states it, is that she is not attempting to enforce any of the prior versions of the 2004 Stock Option and Restricted Stock Plans either, which she regards as nothing but drafts. Those plans were modeled closely on the 2003 Stock Option Plan and were subject to numerous revisions, the preparation of which plaintiff admits she was involved in after her promotion to General Counsel. (Cully Dec. ¶ 18; see also Complaint ¶ 71: "Cully was responsible for drafting the [2005] plans."). (In fact, she reveals that she personally discussed modifying the exclusive forum selection clause to specify the *CDP* after October 2005 when that clause was being inserted into the 2004 plan documents (Cully Dec. ¶ 18).) Her claim now seems to be that she is relying on having been "promised" at some time that she would receive LTI awards as part of her compensation and that she was given some unspecified "representations" as to "certain values and . . . conditions" (Brief at 18), that those promises were never kept, and that she was not awarded whatever was promised. Also, her position is that she is not relying on documents which she describes as "draft[s]" in various unspecified forms (id. ¶ 16), such as the French language drafts of a performance unit plan of CIFG Holding (Cully Exh. 14), not CIFG Services. Moreover, her position (as stated at page 18 of her Brief) is also that as to the 2005 and 2006 awards, there were "no final plans in existence, no [written] agreements ever presented to [her], a dispute as to the make-up of the award for

2005, and uncertainty as to the composition of the 2006 award." Given those positions, the understandable concession that the Court might later find that there are "no enforceable contracts" due to lack of specificity, certainty and definiteness (Brief fn. 15), and in view of her position that she is not asserting the breach of any of the terms of any LTI plans themselves (other than the 2003 Stock Option Plan), defendants agree that this branch of their motion is moot.[1]

III

ARBITRATION OF THE CIFG
SERVICES PUP CLAIM IS REQUIRED

Plaintiff also now asserts that she neither expressly or impliedly agreed to arbitrate any claims relating to any of the CIFG Services' performance unit plans ("PUP"s), that the modified Master PUP annexed to defendants' motion papers as Exhibit D is not enforceable, and that in any event she is not seeking to enforce it. She also asserts (Brief at 11) that only drafts of the PUP existed at the time she announced she wanted to retire (in October 2005, see complaint ¶ 30) and the drafts at that time did not contain any arbitration clauses.

Contrary to plaintiff's position, however, Pamela Brown, CIFG Services' head of Human Resources, states in her declaration facts which prove that plaintiff, by asserting a claim for performance units for work done in 2004, impliedly accepted the arbitration clause:

- Ms. Brown states that the Master PUP of CIFG Services and CIFG Europe (Brown Exh. D) was patterned after the extant CIFG Services PUP governing 2003 and 2004 work years. (Brown Exh. E.) (The name of CIFG Services at the time was CDC IXIS

---

[1] Defendants expressly note that they are not waiving any defenses based on the provision in plaintiff's offer letter (Cully Exh. 1) that, other than the 2003 Stock Option award, plaintiff's participation in annual long-term incentive programs is on a "discretionary basis."

Financial Guaranty Services, Inc.)  That plan contained an arbitration clause identical to the Master PUP, Exh. D.

- Ms. Brown states that all versions of the Master PUP contained the same arbitration clause. This statement is not contradicted.[2]

- Ms. Cully worked on the development of the Master PUP document while she was General Counsel.

Given these facts, to the extent plaintiff is seeking to enforce the material terms and conditions of the performance unit plans, arbitration should be directed. While it is true that the case law holds that a signed arbitration agreement or other document is usually required to evidence an argument to arbitrate, the Court of Appeals of New York has recently held that, "[i]n the arbitration arena, we have determined that the statutory requirement [of a written agreement, CPLR 7501] is met even when the parties never signed a contract expressly agreeing to arbitrate, as long as it is evident from the totality of the circumstances that the parties intended to be bound by documents containing arbitration obligations." Flores v. Lower East Side Service Center, Inc., 4 N.Y.3d 363, 370 (2005) (citations omitted). Employees do not sign benefit plan documents (as opposed to agreement or election forums), and if plaintiff seeks to enforce the terms of the PUP, she should be bound by the arbitration provision.

The arguments plaintiff raises in opposition to this part of defendants' motion do not change this conclusion. First, the French language draft "Plan de 'Performance Units'" she proffers (Cully Exh. 14) is not a draft of a performance unit plan for CIFG Services (or CDC IXIS Financial Guaranty Services, Inc. as it was earlier known), but a July 8, 2004 draft for a plan for CDC IXIS Financial Guaranty Europe, a sister company that is located in Paris and

---

[2] In fact, a draft very recently produced by plaintiff as Confidential Document P00532 – P00540 is a draft with revisions dated "2/15/2006" and "1/11/2006" of the CIFG Services Inc. Performance Unit Plan, which contains the same arbitration clause as the documents attached to Ms. Brown's declaration.

London, and the terms plan of which are governed by French law. See par. 6(f) of the draft. It is therefore not surprising that it does not contain a clause providing for arbitration before the AAA in New York; as attorney Noirot advises, such an arbitration provision would not be enforceable in France.[3]

Second, plaintiff carefully notes that the PUP drafts she refers to were those in process at the time she decided to retire. As stated in the complaint, this was "on or about October 3, 2005" (Complaint ¶ 30.) This was 15 months before she actually left. She concedes that she worked on drafts of the plans during those ensuing 15 months. (Cully Dec. ¶ 18.)

Third, plaintiff has never repudiated any agreement to arbitrate any claims under any draft PUP or any of the other plans. While she struck out and modified sections of the stock option and restricted stock awards sent to her (Cully Exhs. 10 and 13), she did not change either of the forum selection clauses, which provided for a French forum and/or arbitration under conditions not now applicable.

Fourth, the value of a performance unit is determined by a complex formula. (See Brown Exh. D pages 10-11 and Brown Exh. E at pages 8-9.) If plaintiff is asserting a claim for damages based on the failure to honor an award of performance units, in order to establish a value for the units plaintiff will be required to apply the formula set forth in the plan document. However, she cannot simply decide to accept some terms of an integrated document which she needs (such as the valuation formula) and disregard other terms which she does not like. If she intends to enforce any of the PUP plan documents, she should be required to accept all of the terms of these documents. While she says (Brief at 21) she is "not seeking to enforce" what she calls "Modified Master PUP," she either (1) must be seeking to enforce some CIFG Services

---

[3] For the same reason, the English language translations of drafts of the 2004 restricted stock and stock option plans of the French company CIFG Holding (Cully Exhs. 16 and 17) also do not contain choice of forum or arbitration clauses. As attorney Tardivy notes, such clauses would be surplusage to a French lawyer drafting a plan. No argument can be based on the omission of such provisions in the draft French plans.

NY:2360323v1

- 9 -

PUP plan document (which Ms. Brown states always contained an arbitration clause) - - in which case she should present that in evidence now and show it does not have an arbitration clause - - or (2) concede now that there is no PUP plan document that governs. Since her position is not clear as to the latter, claims enforcing the plan should be stayed and arbitration should be directed. If she is not seeking to enforce the provisions to the PUP, plaintiff need not commence any arbitration at the AAA.

## Conclusion

For the foregoing reasons, based on the arguments made in defendants' papers and the position taken by plaintiff in opposition to this motion, the Court should (1) dismiss plaintiff's claim against CIFG Holding arising out of the 2003 Stock Option Plan without prejudice to litigation in France; (2) deny as moot defendants' motion addressed to plaintiff's claims against CIFG Holding on the ground that plaintiff is not seeking to enforce the terms of any CIFG Holding LTI plan other than the 2003 Stock Option Plan; and (3) stay this action and compel arbitration as to plaintiff's claims against CIFG Services regarding claims based on the award of performance units for work done in 2004.

Dated: January 22, 2008

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By: _____
Kenneth J. Kelly
Lori A. Jordan
250 Park Avenue
New York, New York 10177-1211
(212) 351-4500
Attorneys for Defendants