EPSTEIN BECKER & GREEN, P.C.
Kenneth J. Kelly (KK 4195)
Lori A. Jordan (LJ 0853)
250 Park Avenue
New York, New York 10177-0077
(212) 351-4500
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
KATHLEEN G. CULLY,  :

           Plaintiff,  :

   - against -  :    07 CIV. 8195 (PKC)

CIFG HOLDING, CIFG GUARANTY, CIFG  :    **DECLARATION OF**
EUROPE, CIFG SERVICES, INC., CIFG  :    **PATRICK TARDIVY**
ASSURANCE NORTH AMERICA, INC., and
JACQUES ROLFO,  :

           Defendants.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    PATRICK TARDIVY, under penalty of perjury, declares as follows:

    1.    I am an *Avocat à la Cour*, admitted to the Paris (France) Bar and a Counsel in the Paris, France office of Freshfields Bruckhaus Deringer in the firm's corporate group. I joined the firm in 2000, having practiced one year with Ernst & Young law offices. I have worked in the firm's French and international tax group in the Paris office. In 2005 and 2006, I was assigned for nine months to our New York office. I studied law at the University of Aix-Marseille III where I graduated in business law and have post-graduate degrees in business and tax law as well as a degree in comparative law. I advise domestic and international clients on business, contract, employment and benefits law. I am the author or co-author of several

publications on employee benefits and in particular stock options and restricted stock or restricted stock units, including their cross-border implications[1].

2. I have reviewed the declaration of Emmanuel Noirot submitted in this proceeding and the memorandum of law of plaintiff Kathleen Cully which discusses the opinions and statements of Mr. Noirot. Although Mr. Noirot, for the most part, correctly summarizes French law, I disagree with both his argument and that contained in Ms. Cully's brief in opposition to the defendants' motion.

    A.    Designation of the *Tribunal de Grande Instance*.

3. Mr. Noirot is correct that the *Conseil de Prud'hommes* ("CDP") has exclusive jurisdiction in France to adjudicate employment disputes, including compensation and benefits disputes relating to incentive compensation plans such as stock options. I also agree that the parties cannot by their contract confer jurisdiction on another court, such as the *Tribunal de Grande Instance* ("TGI"), when the judicial organization code (*Code de l'organisation judiciaire*) provides for exclusive jurisdiction of the CDP for such disputes, and that such a contract provision will have no effect.

4. As stated by Mr. Noirot, this exclusive competence of the CDP was recognized by the *Cour de Cassation* (the French Supreme Judicial Court) for the first time in a decision of June 21, 2005[2]. Before that decision (and in particular, at the time when the CIFG Stock Option Plan 2003 was adopted), the situation was unclear and was largely discussed amongst academics. Even after this decision of the French Supreme Court, a significant proportion of stock option related litigation has remained with the TGI; that relating to holders of

---

[1] For example, I am the co-author of a special edition of *Option Finance* magazine dated October 24, 2005 entitled "*Les mécanismes d'actionnariat salarié*" (Employee shareholding instruments).

[2] Cass. Soc., June 21, 2005, Société Unilog v. Quelquejay, attached to Mr. Noirot's declaration.

options who are not employees but corporate officers (*mandataires sociaux*). Thus, I have to note that when the CIFG Stock Option Plan 2003 was adopted the exclusive competence of the CDP (v. the TGI which, as stated by Mr. Noirot is otherwise the first instance ordinary court for all matters which are not allocated specifically to another court) was not obvious and unchallenged and when it had become obvious, following the French Supreme Court June 21, 2005 decision, CIFG amended the following versions of its Stock Option and Restricted Stock Plans to comply with this decision and confer jurisdiction to competent Courts within the judicial district of the Paris Court of Appeals (which is a very customary way of drafting "choice of forum" clauses under French law).

5.    The very generic reference to "the competent court" within a given judicial district has been admitted under French law as a valid choice of forum[3] provided that French law allows determining which special court is specifically competent given the matter concerned (which is the case). This situation is explained by the difference between the following two concepts: jurisdiction *rationae loci* and jurisdiction *rationae materiae*. The main purpose of a "choice of forum" clause is to confer jurisdiction to a court situated at a specific location (i.e., in a foreign country); this is jurisdiction *rationae loci*. Sometimes but not always is it aimed at conferring jurisdiction to a specific court (e.g., TGI, CDP, *tribunal d'instance* or *tribunal de commerce*) at that specific location; this is jurisdiction *rationae materiae*.

6.    Ms. Cully's assertion that, because CIFG Stock Option Plan 2003 confers jurisdiction to the TGI of Paris rather than the CDP, as a result, the parties must litigate claims relating to her benefits grants New York, or wherever else Ms. Cully would prefer to litigate, is not correct. Based on the distinction between jurisdiction *rationae loci* and jurisdiction *rationae*

---

[3] Ed. Montchrestien, Domat, *Droit international privé*, P. Mayeur & V. Heuzé, 8th edition, 2004, paragraph 305; attached as Exhibit 1.

*materiae*, a French court would most likely admit that the parties have sufficiently shown their common intent to adjudicate their dispute in France, before a French court, irrespective of whether they made a wrong designation of the court specifically competent. In France, if the employer and employee included a designation of another French court, and not the CDP, as chosen forum, the courts would not enforce the designation, but would advise the parties that the CDP is the correct forum. Whichever party wanted to enforce the employment contract would simply have to commence proceedings in the CDP. Otherwise, the aggrieved party would not have any remedy.

7. As I understand also to be the case in the United States, in France parties who expressly agreed that the law of a particular jurisdiction will govern their relationship, effectively incorporate the statutory law of the jurisdiction into their agreement, and that selected law supplies any missing terms. By selecting French law to be applicable to the Stock Option Plan, and agreeing that disputes shall be resolved in France (and more particularly, in Paris), the French courts would simply read into the Stock Option Plan that the parties shall resolve their employment-related disputes in the CDP.

8. Thus, if Ms. Cully were to bring claims before the TGI of Paris, such claims would probably be dismissed but she would be entitled to file similar claims before the CDP of Paris. If on the contrary, Ms. Cully would bring her claims to the CDP in the first instance, it is very unlikely that any defense relying on the incompetence of the CDP because of the "choice of forum" to the benefit of the TGI would be dismissed. So that, Ms. Cully right to trial would not be ineffective under French law.

9. In summary, even if a French court would most likely view the selection of the TGI as a forum illicit, it should nonetheless view the choice of forum to the benefit of French courts as lawful.

B. Validity of the Forum Selection Clause

10. I strongly disagree with Mr. Noirot that under French law, the forum selection clause is not valid.

11. First of all, it is still debated under French law that stock option plans, awards or agreements are of a contractual nature themselves although they are, as Mr. Noirot notes in his declaration (paragraph 7) "incidental to the employment contract". The most commonly admitted position is that stock option plans, awards or agreements are a unilateral decision of the employer to the benefit of the employees. As a result, there is no need for employees to formally consent to the plan rules by signing any contractual documents. As long as the employer can evidence that the clauses are known to the employee, they are enforceable against him or her.

12. I note that Ms. Cully's declaration states in paragraph 10 states that she was given the opportunity, when she received the agreement, to learn the terms of the Plan that were incorporated by reference. She states:

> 10. In the fall or winter of 2004, CIFG gave me a Stock Option Agreement Pursuant to 2003 Stock Option Plan of CDC IXIS Financial Guaranty Holding, which Stock Option Agreement governed CIFG's award to me ("2003 Stock Option Agreement"), and *a copy of the CDC IXIS Financial Guaranty Holding 2003 Stock Option Plan* ("2003 Stock Option Plan").

13. Since Ms. Cully has conceded that she received the Agreement for her review and signature <u>and the 2003 Stock Option Plan at the same time</u>, in my opinion, a French court would conclude that Ms. Cully was fully aware of the terms of the Plan and therefore that the "choice of forum" clause was enforceable against her.

14. In my view, the same conclusion would have to be reached should the stock option plan or award be deemed of a contractual nature.

15. Article 1108 of the French civil code pertaining to the validity of a contract is as Mr. Noirot states:

> Four requisites are essential for the validity of an agreement:
>
> [1] The consent of the party who binds himself;
>
> [2] His capacity to contract;
>
> [3] A definite object which forms the subject-matter of the undertaking;
>
> [4] A lawful cause in the obligation

Based on the record before the Court, it appears quite clear that each of these conditions have been met.

16. As to the first element, Ms. Cully signed a "Stock Option Agreement" dated as of January 30, 2004 (Exhibit 3 to her affidavit). That agreement states unambiguously as follows:

> 16. **Terms of Plan Govern.** This Agreement and the terms of the Options will be governed by the terms of the Plan, which is hereby incorporated by reference in this Agreement. In the event of any ambiguity in this Agreement and the terms of the Plan, the terms of the Plan will govern. By Beneficiary's initials on each page of this Agreement and by Beneficiary's signature below, Beneficiary acknowledges receipt of the Plan and agrees to be bound by its terms and by this Agreement.

> 20. **Governing Law.** This Agreement will be governed by and construed in accordance with the laws of France.

Contrary to Mr. Noirot's assertion (in paragraph 17) that the Stock Option Agreement "only provides [that] French law applies," the Agreement incorporates by reference all of the terms of the 2003 Stock Option Plan. The Plan itself is explicit that the courts of France have exclusive jurisdiction of any disputes relating to the parties' rights and obligations of the parties.

17. Again as Ms. Cully has conceded in her declaration that she was given the opportunity, when she received the agreement together with a copy of the Plan, to learn the terms of the Plan that were incorporated by reference, she knowingly consented to the application of French law and the exclusive jurisdiction of the French courts in Paris by executing the Stock Option Agreement. (Notably, there is no issue about Ms. Cully not understanding the Plan: the 2003 Stock Option Plan states that the "Plan has been established in the English language." See Plan, Section 23.)

18. Contrary to what Mr. Noirot states, incorporation by reference into an agreement of terms of another agreement is well admitted under French law, including in relation to "choice of forum" clauses, whether in employment contracts or other agreements. Even in the case of June 30, 2002 cited by Mr. Noirot[4], the French Supreme Court admits that the "choice of forum" clause could have been valid if the contract had made a reference, whether direct or indirect, to the general terms and conditions.

The Supreme Court states:

> Whereas however the potential knowledge by one party, in the context of previous transactions, that the general terms and conditions of the other party included a "choice of forum" clause or the knowledge that this clause existed in documents unrelated to

---

[4] Cass. Civ. 1ère, June 30, 1992, Société Verdol v. Société General Industrial and Engineering Supplies, #90.21491, attached to Mr. Noirot's declaration.

the disputed transaction is not sufficient, even in case of ongoing business relationships, to make this clause enforceable <u>if the contract makes no reference to it, directly or indirectly</u> (emphasis added).

19. Moreover, in a decision of February 16, 1999[5], the French Supreme Court expressly ruled that a "choice of forum" clause could be deemed accepted where it was stipulated in the "general prescription agreement" to which the contact was making reference.

20. As far as employment contracts are concerned, the French Supreme Court had already decided, on March 1, 1989[6], that:

> Whereas [...] noting that nothing in the presentation of the typewritten contract led to think that the "choice of forum" clause could have been consented less than other [clauses] by Mr. François, the court of appeals [...] has taken the view that the employee had expressed without equivoque its decision not to claim the jurisdiction of French courts [...]

In that decision, the French Supreme Court has decided to make the unequivocal and undifferentiated consent to all clauses of a contract prevail over a heavy formalism on the font style of "choice of forum" clauses.

21. Based on the foregoing, there is no doubt in my view that Ms. Cully has consented to the "choice of forum" clause which is incorporated by reference into the Stock Option Plan.

22. The other three requirements for contract validity are also present.

- Ms. Cully is of lawful age and a practicing attorney; in fact, she is a graduate of Yale Law School and experienced in preparing, let alone understanding, complex legal documents.

---

[5] Cass. Civ. 1ère, February 16, 1999, <u>Recocer v. office des cereals tunisien OFIBLE, Worms and Banque nationale agricole</u>, #96-19.469, attached as Exhibit 2.

[6] Cass. Soc., March 1, 1989, <u>François v. Société Europ-Continent et al.</u>, #805 P, RJS 1989, #448, attached as Exhibit 3.

- The Stock Option Agreement is definite as to the object of the agreement and its material terms and conditions.
- We should assume that the cause for the stock option grant was lawful under the law of France.

23. Mr. Noirot states that a clause that gives jurisdiction to a foreign tribunal is "exceptional" under French law. While it is not common for two French persons who contract in France to perform their contract in France to select a foreign tribunal or jurisdiction to resolve their disputes, in my experience contracts between parties in two different countries (one being France) which select the jurisdiction of the non-French party for dispute resolution are not uncommon at all. It is also common that such parties will sometimes select a third and unrelated jurisdiction to resolve disputes. It is not uncommon either that a French tribunal is given jurisdiction for disputes arising out of stock options where the stock issuer is a French company and even if the options have been granted to employees in foreign jurisdictions.

24. In conclusion, it is my view that (i) the "choice of forum" clause included in the CIFG Stock Option Plan is lawful to the extent that it confers jurisdiction to French courts to adjudicate disputes arising out of the Plan and irrespective of whether it has happened to designate the TGI of Paris rather than the CDP, (ii) Ms. Cully was fully aware and validly consented to such "choice of forum" clause.

I declare under penalty of perjury of the United States of America that the foregoing is true and correct.

Executed on January 19, 2008

_____
PATRICK TARDIVY